IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RWN DEVELOPMENT GROUP, LLC et al.,                )
                                                  )
                                                  )
        Plaintiffs,                               )
v.                                                )        Civil Action No. 07-1546 (RBW)
                                                  )
THE TRAVELERS INDEMNITY                           )
COMPANY OF CONNECTICUT,                           )
                                                  )
        Defendant.                                )

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND CASE
TO SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

Defendant The Travelers Indemnity Company of Connecticut ("Travelers"), by its

undersigned attorneys, submits this memorandum of points and authorities in opposition to

Plaintiffs' Motion to Remand Case to Superior Court for the District of Columbia (Docket No. 5).

I.      **INTRODUCTION**

Travelers issued a liability policy ("the Policy") with respect to a condominium

development in the District.  Plaintiffs allege that they are insureds under the Policy and seek

coverage with respect to various underlying lawsuits ("the Lawsuits") alleging problems with the

condominium development and seeking $802,880 in damages.  In this coverage action, Plaintiffs

contend that Travelers must defend them against the Lawsuits.

The Court has diversity jurisdiction over this coverage action under 28 U.S.C.

§1332(a)(1).  Diversity of citizenship plainly exists between Plaintiffs, who are citizens of

Maryland and the District, and Travelers, which is a Connecticut citizen.  In seeking to remand

this action to Superior Court, Plaintiffs do not disclaim any intention to seek damages above

$75,000. Rather, they argue that, because they chose not to specify a particular dollar amount in demanding compensatory, consequential, and punitive damages, Travelers cannot prove that the amount in controversy exceeds $75,000.

In ascertaining the value of Plaintiffs' claim for declaratory relief, however, the Court does not look to what Plaintiffs might recover at law, but to the value of the right they seek to protect or the harm they seek to prevent. If the Court rules that Plaintiffs are not entitled to a defense under the Travelers policy, such a ruling automatically would preclude coverage for any judgment entered against Plaintiffs in the Lawsuits. The amount in controversy therefore includes the $802,880 in damages alleged in the Lawsuits, plus the cost of Plaintiffs' defense in those suits. Because diversity of citizenship exists, with the amount in controversy well in excess of $75,000, the Court should deny the motion to remand.

## II.    ALLEGATIONS OF COMPLAINT

Travelers issued to 1700 Kalorama Condo LLC a policy, numbered I-680-5076B416-TCT-04, effective 11/12/2004 to 11/16/2005, with limits of $1 million per occurrence. *See* Complaint, ¶ 6; Exhibit 1.[1] The liability coverage of the Policy obligates Travelers to pay those sums that the insured becomes legally obligated to pay as damages because of covered bodily injury or property damage. *See* Exhibit 1, at 3. Travelers also must defend an insured against a lawsuit seeking such damages. *Id.*

---

[1] The Court may consider written documents referenced in a pleading but not attached thereto where the sufficiency of allegations of the Complaint are at issue, including with respect to removal jurisdiction. *See generally* Wright & Miller, 5A Fed. Prac. & Proc. Civ. 3d § 1327. A defendant may attach such documents as exhibits to its opposition to the motion to remand, but the better practice is for the removing party to amend its notice of removal pursuant to 28 U.S.C. § 1653 to include these documents. *See Willingham v. Morgan*, 395 U.S. 402, 408, 89 S. Ct. 1813, 1816 n.3 (1969). Out of an abundance of caution, Travelers is pursuing both courses.

Plaintiffs all claim to be insureds under the Policy. *See* Complaint, ¶ 7.  They requested that Travelers defend and indemnify them with respect to three lawsuits against them in the Superior Court for the District of Columbia.  *Id.*, ¶¶ 9-13.  The complaint filed by Tommy Rodgers and Sharon Bresin seeks damages of $125,000.00 against Plaintiffs.  *See* Exhibit 2, at 13.  The complaint filed by Julia Hyman Tomala seeks damages of $152,880.00 against Plaintiffs *See* Exhibit 3, at 11.  The complaint filed by The Unit Owners' Association of 1700 Kalorama Lofts seeks damages of not less than $525,000.00 against 1700 Kalorama Condominium, LLC. *See* Exhibit 4, at 9.  Travelers denied coverage for the Lawsuits.  *See* Complaint, ¶ 15.

## III.   ARGUMENT

### A.   Substantive District of Columbia Law

The law of the District of Columbia, as the location of the named insured's headquarters, governs the Policy.  *See Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 968, 971 (D.D.C. 1991).  As a general matter, a liability policy imposes two distinct obligations: (1) the duty to defend the policyholder against lawsuits seeking damages because of covered injury; and (2) the duty to indemnify the policyholder if it becomes legally obligated to pay such damages.  *See I.J.G., Inc. v. Penn-Am. Ins. Co.*, 803 A.2d 430, 433 (D.C. 2002).  The defense obligation depends on the allegations of the lawsuit against the policyholder, while the narrower indemnity obligation ordinarily depends on the facts developed in that  lawsuit. *Id.*

Consequently, the existence of a defense obligation for a lawsuit does not necessarily mean that an insurer will be obligated to indemnify the insurer for a judgment entered in that suit. Because the defense obligation depends on potential coverage for sums claimed in the underlying lawsuit, however, "'a finding by a court that there is no duty to defend automatically means that

there is no duty to indemnify.'" *Id.* at 431 n.1 (quoting *New York v. Blank*, 745 F. Supp. 841, 844 (N.D.N.Y. 1990)).

  **B.**  **Amount in Controversy as to Request for Declaratory Relief**

  "In actions seeking declaratory or injunctive relief, the amount in controversy is not the amount that plaintiff might recover at law, but the value of the right to be protected or the extent of the injury to be prevented."  Wright & Kane, 20 Fed. Prac. & Proc. Deskbook § 35.  *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1977) (in action for declaratory and injunctive relief, amount in controversy measured by losses that would flow from statute's enforcement).

  Where a declaratory judgment action will decide whether a defense obligation exists under a liability policy, the "amount in controversy" extends to the entire demand in the underlying action.  The Fourth Circuit rejected a policyholder's contention that the jurisdictional amount in controversy was "lacking because the [insurer] is not obliged to indemnify the insured until a judgment has been rendered against him, and in the meantime the only point to be decided is whether the [insurer] is obligated by its policy to defend the suit in the state court." *Aetna Cas. & Sur. Co. v. Yeatts*, 99 F.2d 665, 668 (4th Cir. 1938).  If the court ruled that the policyholder was not entitled to a defense, "it will be necessarily determined thereby that the [insurer] has no obligation to indemnify him in the event of an adverse decision; and since its obligation to indemnify, if found to exist, extends to the sum of $5,000, the amount in controversy is sufficient." *Id.  See Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1316 (S.D. Fla. 2006) (amount in controversy satisfied where coverage limit was $1 million and policyholder faced potential liability well in excess of $75,000).

Thus, assuming the truth of Plaintiffs' contentions in this action, the value of the right that Plaintiffs seek to protect, and the extent of injury they seek to prevent, is not limited to the cost of their defense against the Lawsuit.  The amount in controversy encompasses the entire value of Plaintiffs' interest in establishing a potential for coverage for the Lawsuits, which seek $802,880 in damages, under the Policy, which contains a limit of $1 million per occurrence.  If the Court rules in favor of Travelers on Plaintiffs' claim for declaratory relief, finding that Travelers has no obligation to defend Plaintiffs against the Lawsuits, then Travelers automatically would have no obligation to pay any judgment entered against Plaintiffs in the Lawsuits. *Id.* at 431 n.1.  The amount in controversy therefore includes the $802,880 in damages alleged in the Lawsuits, the cost of Plaintiffs' defense in those suits, and the various other damages that Plaintiffs seek from Travelers in this action.

IV.     **CONCLUSION**

Diversity of citizenship exists, and the amount in controversy is well in excess of $75,000.

Because federal jurisdiction exists under 28 U.S.C. §1332(a)(1), the Court should deny the

motion to remand.

Respectfully submitted,

____/s/ *Steven M. Klepper*_____
Lee H. Ogburn, Bar No. MD 00118
Steven M. Klepper, Bar No. MD 26664
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
410.752.6030 (voice)
410.539.1269 (facsimile)

*Attorneys for Defendant*

Dated: October 10, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RWN DEVELOPMENT GROUP, LLC et    )
al.,    )
    )
        Plaintiffs,    )
v.    )    Civil No. 07-1546 (RBW)
    )
THE TRAVELERS INDEMNITY    )
COMPANY OF CONNECTICUT,    )
    )
        Defendant.    )

## **ORDER**

Upon consideration of Plaintiffs' Motion to Remand Case to Superior Court for the

District of Columbia (Docket No. 5), and Defendants' opposition thereto, it is this date hereby

ORDERED that the motion is DENIED.

SO ORDERED.

_____
Reggie B. Walton
United States District Court Judge

Dated:


**ST PAUL TRAVELERS**

## CONDOMINIUM PAC

### A Custom Insurance Policy Prepared for:

**1700 KALORAMA CONDO LLC**
**1700 KALORAMA RD**

**WASHINGTON**          **DC   20009**

**Presented by:  CLARKE & SAMPSON INC**

**EXHIBIT**

tabbies®   **1-A**

**ST PAUL TRAVELERS**
One Tower Square, Hartford, Connecticut 06183

**COMMON POLICY DECLARATIONS**
CONDOMINIUM PAC
BUSINESS: CONDOMINIUMS

**POLICY NO.:** I-680-5076B416-TCT-04
**ISSUE DATE:** 11-16-04

**INSURING COMPANY:**
THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

1. **NAMED INSURED AND MAILING ADDRESS:**

    1700 KALORAMA CONDO LLC
    1700 KALORAMA RD

    WASHINGTON            DC 20009

2. **POLICY PERIOD:** From 11-12-04 to 11-12-05 12:01 A.M. Standard Time at your mailing address.

3. **LOCATIONS:**

| PREM. NO. | BLDG. NO. | OCCUPANCY | ADDRESS (same as Mailing Address unless specified otherwise) |
|---|---|---|---|
| 01 | 01 | CONDOMINIUMS | 1700 KALORAMA RD WASHINGTON            DC  20009 |

4. **COVERAGE PARTS AND SUPPLEMENTS FORMING PART OF THIS POLICY AND INSURING COMPANIES**

| COVERAGE PARTS and SUPPLEMENTS | INSURING COMPANY |
|---|---|
| Businessowners Coverage Part | TCT |
| Boiler & Machinery Coverage Part | TCT |

5. The COMPLETE POLICY consists of this declarations and all other declarations, and the forms and endorsements for which symbol numbers are attached on a separate listing.

6. **SUPPLEMENTAL POLICIES:** Each of the following is a separate policy containing its complete provisions.

| POLICY | POLICY NUMBER | INSURING COMPANY |
|---|---|---|

DIRECT BILL

7. **PREMIUM SUMMARY:**

Provisional Premium                    $16,286.00
Due at Inception                       $
Due at Each                            $

NAME AND ADDRESS OF AGENT OR BROKER          COUNTERSIGNED BY:

CLARKE & SAMPSON INC         HG208
228 S WASHINGTON ST STE 200
ALEXANDRIA                   VA 22314-5404
                                             Authorized Representative
IL T0 19 08 01   (Page 1 of  01)             DATE: _____
Office: CHANTILLY/WASHDC      DOWN

**CERTIFIED POLICY**

The policy to which this certification is affixed is a true and accurate copy of the policy contained in company records and used in the regular course of business as of the date shown below. No representation or warranty is made that this copy is identical in all respects to the policy issued.

No insurance is afforded by this copy.

_The Travelers Indemnity Co & Cont_    _H. E. Fitts_
Name of Insuring Company

_C&D. 50716B446_    Date: _8-27-07_
Policy Number


One Tower Square, Hartford, Connecticut 06183

## BUSINESSOWNERS COVERAGE PART DECLARATIONS

CONDOMINIUM PAC
DELUXE PLAN

**POLICY NO.:** I-680-5076B416-TCT-04
**ISSUE DATE:** 11-16-04

**INSURING COMPANY:**
THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

**DECLARATIONS PERIOD:** From 11-12-04 to 11-12-05 12:01 A.M. Standard Time at your mailing address.

**FORM OF BUSINESS:** LLC

**COVERAGES AND LIMITS OF INSURANCE:** Insurance applies only to an item for which a "limit" or the word "INCLUDED" is shown.

| BUSINESSOWNERS PROPERTY COVERAGE: | PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. |
|---|---|---|---|---|
| | 01 | 01 | | |
| **BUILDINGS:** | | | | |
| Limit of Insurance: | $ | 12,000,000 | $ | |
| Loss Adjustment Basis: | | | | |
| Inflation Guard: | | | | |
| Exterior Building Glass Deductible: | $ | 250 | $ | |
| | | | | |
| **BUSINESS PERSONAL PROPERTY:** | | | | |
| Limit of Insurance: | $ | | $ | |
| Loss Adjustment Basis: | | | | |
| Inflation Guard: | | | | |
| Exterior Building Glass: | | | | |
| Exterior Building Glass Deductible: | $ | | $ | |

**BUSINESS INCOME:** Limit-Actual loss up to 12 Consecutive Months

**DEDUCTIBLE AMOUNT:** Businessowners Property Coverage: $ 2,500 Per Occurrence.

## COMMERCIAL GENERAL LIABILITY COVERAGE–

### OCCURRENCE FORM

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| General Aggregate (except Products–Completed Operations) Limit | $ | 2,000,000 |
| Products–Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage To Premises Rented To You | $ | 300,000 |
| Medical Payments Limit (any one person) | $ | 5,000 |

**MORTGAGE HOLDER–BUILDING COVERAGE ONLY:**

**SPECIAL PROVISIONS:**

## COMMERCIAL GENERAL LIABILITY COVERAGE IS SUBJECT TO A GENERAL AGGREGATE LIMIT

MP T0 01 11 03  (Page 1 of  01)

**POLICY NUMBER:** I-680-5076B416-TCT-04

**EFFECTIVE DATE:** 11-12-04

**ISSUE DATE:** 11-16-04

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL T0 19 08 01    COMMON POLICY DEC
MP T0 01 11 03    BUSINESSOWNERS COVERAGE PART DECS
IL T8 01 01 01    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL T3 15 02 04    COMMON POLICY CONDITIONS
```

BUSINESSOWNERS

```
MP T1 30 08 01    TBL OF CONT-BUSINESSOWNERS COV-DELUXE
MP T1 02 01 00    BUSINESSOWNERS PROPERTY COV-SPEC FORM
MP T1 03 01 00    AMENDATORY PROVISIONS-CONDOMINIUM
MP T3 23 05 02    FUNGUS ROT BACTERIA CHGS
MP T3 07 03 97    PROTECTIVE SAFEGUARDS-SPRINK&RESTAURANT
MP T3 25 10 04    TERRORISM RISK INS ACT OF 2002 NOTICE
MP T9 70 01 00    TRAVELERS POWER-PAC ENDORSEMENT
```

COMMERCIAL GENERAL LIABILITY

```
CG T0 34 11 03    TABLE OF CONTENTS
CG 00 01 10 01    COMMERCIAL GENERAL LIABILITY COV FORM
CG D2 37 11 03    EXCLUSION-REAL ESTATE DEV ACTIVITIES
CG D2 55 11 03    AMENDMENT OF COVERAGE - POLLUTION
CG D3 09 11 03    AMEND ENDT-PRODUCTS-COMPLETED OPR HAZARD
CG D3 25 01 04    ADDITIONAL INSURED - MORTGAGEE,ASSIGNEE
CG 21 70 11 02    CAP ON LOSSES CERTIFIED ACTS TERRORISM
CG D0 37 01 04    OTHER INSURANCE-ADDITIONAL INSUREDS
CG D1 86 11 03    XTEND ENDORSEMENT
CG D2 03 12 97    AMEND-NON CUMULATION OF EACH OCC
CG D2 34 11 03    WEB XTEND - LIABILITY
MP T1 25 11 03    HIRED AUTO AND NON-OWNED AUTO LIAB
CG D2 43 01 02    FUNGI OR BACTERIA EXCLUSION
CG D2 56 11 03    AMENDMENT OF COVERAGE
CG D2 88 11 03    EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG D3 26 01 04    EXCLUSION-UNSOLICITED COMMUNICATIONS
CG D0 76 06 93    EXCLUSION-LEAD
CG D1 42 01 99    EXCLUSION-DISCRIMINATION
CG D2 42 01 02    EXCLUSION WAR
CG T4 78 02 90    EXCLUSION-ASBESTOS
CG T3 33 11 03    LIMIT WHEN TWO OR MORE POLICIES APPLY
```

BOILER AND MACHINERY

```
BM T0 21 09 93    ENERGY EQUIP SPECIAL COV FORM DEC
BM T1 42 09 92    TABLE OF CONTENTS BM COV PART
```

**POLICY NUMBER:**   I-680-5076B416-TCT-04

**EFFECTIVE DATE:**   11-12-04

**ISSUE DATE:**   11-16-04

BOILER AND MACHINERY (CONTINUED)

  BM T1 41 04 92   ENERGY EQUIPMENT SPECIAL COV FORM

INTERLINE ENDORSEMENTS

  IL 00 21 07 02   NUCLEAR ENERGY LIAB EXCL END-BROAD FORM
  IL 02 78 07 02   DC CHANGES - CANCELLATION AND NONRENEWAL
  IL 09 52 11 02   CAP LOSSES-CERTIFIED ACTS OF TERRORISM
  IL T3 53 04 98   EXCL CERTAIN COMPUTER-RELATED LOSSES

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium: or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. If a Coverage Part is cancelled, that date will become the end of the policy period as respects that Coverage Part only.

5. If this policy or any Coverage Part is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspection, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful: or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums: and

   b. Will be the payee for any return premiums we pay.

2. We compute all premiums for this policy in accordance with our rules, rates, rating plans, premiums and minimum premiums. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. BUSINESSOWNERS COVERAGE PART –REFERENCES TO FORMS AND ENDORSEMENTS

In some instances, the Common Policy Declarations may list endorsements included in the Businessowners Coverage Part that reference:

1. The Commercial Property Coverage Part;

2. The Commercial General Liability or Liquor Liability Coverage Part; or

3. Standard Property forms including, but not limited to, the following:

   a. Building and Personal Property Coverage Form;

   b. Business Income Coverage Form;

   c. Commercial Property Conditions;

   d. Condominium Association Coverage Form;

   e. Condominium Commercial Unit–Owners Coverage Form;

   f. Causes of Loss Basic Form;

g. Causes of Loss Special Form; and

h. Causes of Loss Earthquake Form.

   Endorsements referencing the Commercial Property Coverage Part or the Standard Property Forms referenced above apply to the Businessowners Property Coverage Form (Standard or Special version) in the same manner as they apply to the forms they reference.

   Endorsements referencing the Commercial General Liability Coverage Part apply to the Commercial General Liability Coverage Form (included in the Businessowners Coverage Part) in the same manner as they apply to the form they reference.

## H. INSURANCE UNDER TWO OR MORE COVERAGE PARTS

If two or more of this policy's Coverage Parts apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## I. INSURING COMPANIES

In return for payment of the premium, The Travelers agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

The companies listed below (each a stock company) have executed this policy, but it is valid only if countersigned on the Common Policy Declarations by our authorized representative.

The Travelers Indemnity Company (IND)
The Phoenix Insurance Company (PHX)
The Charter Oak Fire Insurance Company (COF)
Travelers Property Casualty Company of America (TIL)
The Travelers Indemnity Company of Connecticut (TCT)
The Travelers Indemnity Company of America (TIA)

General Counsel & Secretary

Chairman of the Board & Chief Executive Officer

**IL T3 15 02 04**

(Rev. 2-95)

**BUSINESSOWNERS**

**BUSINESSOWNERS**

**TABLE OF CONTENTS**

# BUSINESSOWNERS COVERAGE PART
# DELUXE PLAN

The following indicates the contents of the principal forms which may be attached to your policy. It contains no reference to the Declarations or Endorsements which also may be attached.

# BUSINESSOWNERS PROPERTY COVERAGE
# SPECIAL FORM MP T1 02

Beginning on Page

COVERAGE — BUILDING, BUSINESS PERSONAL PROPERTY
    AND BUSINESS INCOME ........................................................................................................ 1

    Covered Property ................................................................................................................ 1
    Property and Costs Not Covered ...................................................................................... 2
    Business Income ............................................................................................................... 2
    Covered Causes of Loss .................................................................................................. 3
    Limitations ......................................................................................................................... 3
    Additional Coverages ........................................................................................................ 4
    Coverage Extensions ........................................................................................................ 11

EXCLUSIONS ............................................................................................................................ 14

LIMITS OF INSURANCE ........................................................................................................... 18

    Inflation Guard .................................................................................................................. 18
    Business Personal Property Limit — Seasonal Increase ................................................. 19

DEDUCTIBLES .......................................................................................................................... 19

PROPERTY LOSS CONDITIONS .............................................................................................. 19

    Abandonment ................................................................................................................... 19
    Appraisal .......................................................................................................................... 19
    Duties in the Event of Loss or Damage ........................................................................... 19
    Loss Payment — Building and Personal Property ........................................................... 20
    Loss Payment — Business Income and Extra Expense .................................................. 22
    Recovered Property .......................................................................................................... 23
    Noncumulative Limit ......................................................................................................... 24

COMMERCIAL PROPERTY CONDITIONS ............................................................................... 24

    Concealment, Misrepresentation or Fraud ...................................................................... 24
    Control of Property ............................................................................................................ 24
    Insurance Under Two or More Coverages ....................................................................... 24
    Legal Action Against Us ................................................................................................... 24
    Liberalization .................................................................................................................... 24
    No Benefit to Bailee ......................................................................................................... 24
    Other Insurance ............................................................................................................... 24
    Policy Period, Coverage Territory ..................................................................................... 24
    Transfer of Rights of Recovery Against Others to Us ...................................................... 24
    Coinsurance ...................................................................................................................... 25
    Mortgageholders .............................................................................................................. 25

PROPERTY DEFINITIONS ........................................................................................................ 26

# BUSINESSOWNERS PROPERTY COVERAGE
# SPECIAL FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION G – PROPERTY DEFINITIONS.

**A. COVERAGE – BUILDING, BUSINESS PERSONAL PROPERTY AND BUSINESS INCOME**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means the portion of the building which you rent, lease or occupy and any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**1. Covered Property**

Covered Property, as used in this Coverage Form, means the type of property described in this section, **A.1.**, and limited in **A.2.**, Property and Costs Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently attached:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings;

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(e)** Lawn maintenance and snow removal equipment; and

**(f)** Alarm systems;

**(5)** If not covered by other insurance:

**(a)** Alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making alterations or repairs to the building or structure.

**b. Business Personal Property** located in or on the buildings described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, including:

**(1)** Property owned by you and used in your business;

**(2)** Property of others that is in your care, custody or control;

**(3)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fix-

**MP T1 02 01 00**

tures, alterations, installations or ad-
ditions:

    **(a)** Made a part of the building or
structure you occupy or lease but
do not own; and

    **(b)** You acquired or made at your
expense but are not permitted to
remove;

  **(4)** "Money" and "Securities".

**2. Property and Costs Not Covered**

Unless the following is added by endorse-
ment to this policy, Covered Property does
not include:

**a.** Aircraft;

**b.** **(1)** Automobiles held for sale;

  **(2)** Vehicles or self-propelled machines
that are:

    **(a)** Required to be licensed if used
on public roads; or

    **(b)** Operated principally away from
the described premises;

  This paragraph does not apply to:

    **(a)** Vehicles or self-propelled ma-
chines or autos you manufacture,
process or warehouse;

    **(b)** Vehicles or self-propelled ma-
chines, other than autos, you
hold for sale; or

    **(c)** Trailers, but only to the extent
provided for in the Coverage Ex-
tension for Non-Owned Detached
Trailers.

**c.** Bulkheads, piers, pilings, wharves or
docks;

**d.** Dams and dikes;

**e.** Contraband, or property in the course of
illegal transportation or trade;

**f.** The cost of excavating, grading, backfill-
ing or filling (except those costs made
necessary due to repair of buildings in-
sured under this policy from a Covered
Cause of Loss), reclaiming or restoring
land or water;

**g.** Water or land whether in its natural state
or otherwise (including land on which the
property is located), growing crops or
standing timber;

**h.** The following property while outside of
buildings:

  **(1)** Bridges, walks, roadways, patios or
other paved surfaces;

  **(2)** Retaining walls not part of the build-
ing described in the Declarations;

  **(3)** Fences, trees, shrubs and plants
(other than "stock" of trees, shrubs or
plants), or lawns (including fairways,
greens and tees); or

  **(4)** Outdoor radio or television antennas,
(including satellite dishes) and in-
cluding their lead-in wiring, masts or
towers

except as provided in the Outdoor Prop-
erty Coverage Extension;

**i.** Watercraft (including motors, equipment
and accessories) while afloat;

**j.** Accounts, bills, deeds, or evidences of
debt;

**k.** The cost to research, replace or restore
the information on valuable papers and
records, including those which exist on
electronic or magnetic media, except as
provided in the Valuable Papers Cover-
age Extension;

**l.** Property that is covered under another
coverage form or endorsement of this or
any other policy in which it is more spe-
cifically described, except for the excess
of the amount due (whether you can col-
lect on it or not) from that other insurance;

**m.** Underground pipes, flues, drains or tun-
nels, whether or not connected to build-
ings;

**n.** Collections whose value is based on an-
tiquity or rarity; and

**o.** Bullion, gold, silver, platinum and other
precious alloys or metals, except if they
are used in your "operations" (theft limita-
tion applies).

**3. Business Income**

**a.** Business Income means the:

  **(1)** Net Income (Net Profit or Loss before
income taxes) that would have been
earned or incurred;

  **(2)** Continuing normal operating ex-
penses incurred, including payroll;

  **(3)** Includes "Rental Value"; and

  **(4)** Includes "Maintenance Fees" if you
are a condominium association.

**b.** If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will also pay for the actual loss of Business Income you sustain during the period that:

    **(1)** Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(2)** Ends on the earlier of:

        **(a)** The date you could restore your "operations" with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage occurred; or

        **(b)** Sixty consecutive days after the date determined in **b.(1)** above.

However, this extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

**c.** We will only pay for loss of Business Income that occurs within 12 consecutive months immediately following the date of direct physical loss or damage.

**4. Covered Causes of Loss**

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

**a.** Limited in Paragraph **A.5.,** Limitations; or

**b.** Excluded in Section **B.,** Exclusions.

**5. Limitations**

    **a.** We will not pay for loss of or damage to:

    **(1)** The "interior of any building or structure" or to personal property in the building or structure, caused by rain, snow, sleet or ice whether driven by wind or not, unless:

        **(a)** The building or structure first sustains actual damage to the roof or walls by wind or hail and then we will pay only for the loss

to the "interior of the building or structure" or the personal property in the building or structure that is caused by rain, snow, sleet, sand or dust entering the building(s) or structure(s) through openings in the roof or walls made by direct action of wind; or

        **(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    **(2)** Steam boilers, steam pipes, steam engines, or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    **(3)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than explosion.

**b.** We will not pay more than $500 in any one occurrence for loss of or damage to glass that is part of the building or structure, regardless of the number of panes, plate or similar units of glass. Subject to this $500 limit on all loss or damage, we will not pay more than $100 for any one pane, plate, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. However, this limitation does not apply to loss or damage by the "specified causes of loss", except vandalism.

If you are a building owner and Exterior Building Glass is shown on the Declarations or a tenant who has purchased optional Exterior Building Glass, this limitation does not apply.

**c.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    **(1)** Live animals or birds, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This limitation does not apply to:

    (a) Glass that is part of a building or structure;

    (b) Containers of property held for sale; or

    (c) Photographic or scientific instrument lenses.

**d.** For loss or damage by "theft", the most we will pay in any one occurrence for the following types of property is:

(1) $2,500 for all furs, fur garments and garments trimmed with fur.

(2) $5,000 for all jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for all patterns, dies, molds and forms.

**e.** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss if the building where loss or damage occurs has been "vacant" for more than 60 consecutive days before that loss or damage occurs:

(1) Vandalism;

(2) Sprinkler Leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water Damage;

(5) Theft; or

(6) Attempted theft.

With respect to Covered Causes of Loss other than those listed in **5.e.(1)** through **5.e.(6)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**f.** We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

(1) 60 consecutive days from the date of direct physical loss or damage; or

(2) The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises which suffered loss or damage in the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

**Example No. 1:**

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to repair and replace the property at the premises, and until October 1 to restore the computer data that was lost when the damage occurred.

We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2 – October 1 is not covered.

**Example No. 2:**

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

**6. Additional Coverages**

Unless otherwise stated, payments made under the following Additional Coverages will not increase the applicable Limits of Insurance.

**a. Arson and Theft Reward**

We will pay a reward of 25% of an incurred claim up to a maximum of $5,000 for information leading to:

**(1)** an arson conviction in connection with a covered fire or explosion loss, or

**(2)** a theft conviction in connection with a covered theft loss.

This is the most we will pay for any one occurrence under this policy or any combination of policies.

The amount payable under this Additional Coverage is in addition to the Limits of Insurance.

**b. Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property within the jurisdiction invoking the civil authority. Such loss or damage must be caused by or resulting from a Covered Cause of Loss.

This coverage will apply for a period of up to two consecutive weeks from the date of that action of civil authority.

**c. Debris Removal**

**(1)** Subject to Paragraphs **(3)** and **(4)**, we will pay your necessary and reasonable expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)** Examples

The following examples assume that coverage is not written on a coinsurance basis.

Example #1

| | |
|---|---|
| Limit of Insurance | $225,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $125,000 |
| Amount of Loss Payable | $124,500 |
| | ($125,000 − $500) |
| Debris Removal Expense | $25,000 |

Debris Removal

Expense Payable        $25,000
            ($25,000 is 20% of $125,000)

The debris removal expense is less than 25% of the sum of the loss payable and the debris removal expense ($124,500 + $25,000 = $149,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

Example #2

| | |
|---|---|
| Limit of Insurance | $225,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $200,000 |
| Amount of Loss Payable | $199,500 |
| | ($200,000 – $500) |
| Debris Removal Expense | $75,000 |

Debris Removal Expense Payable
        Basic Amount        $25,500
        Additional Amount  $25,000

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows:

$200,000 ($199,500 + $500) x .25 = $50,000; capped at $25,500. The cap applies because the sum of the loss payable ($199,500) and the basic amount payable for debris removal expense ($25,500) cannot exceed the Limit of Insurance ($225,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($75,000) exceeds 25% of the loss payable plus the deductible ($75,000 is 37.5% of $200,000), and because the sum of the loss payable and debris removal expense ($199,500 + $75,000 = $274,500) would exceed the Limit of Insurance ($225,00). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal

expense in this example is $50,500; $24,500 is not covered.

**d. Employee Dishonesty**

**(1)** We will pay for loss of or damage to Business Personal Property resulting directly from "Employee Dishonesty" anywhere within the "coverage territory".

**(2)** The most we will pay for loss or damage in any one occurrence is the smallest of the following:

**(a)** The limit for Business Personal Property stated in the Declarations (If more than one building containing Business Personal Property is insured, the limit at the building having the highest Business Personal Property limit will apply.); or

**(b)** $250,000 (if the Business Personal Property limit at any building is greater than this amount).

**(3)** Occurrence means all loss caused by or involving the same "employee(s)", whether the result of a single act or series of acts.

**(4)** We will pay for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates year to year or period to period.

**(5)** We will not pay for loss resulting from the dishonest acts of any "employee":

**(a)** If coverage for that "employee" was either cancelled or excluded from any previous insurance policy of yours providing employee dishonesty coverage.

**(b)** Occurring immediately after discovery by:

   **i.** You; or

   **ii.** Any of your partners, officers or directors not in collusion with the "employee", of any fraudulent dishonest act committed by that "employee" before or after being employed by you.

(c) Occurring after the effective date stated in our written notice to you that the "employee" is no longer covered. That effective date will not be less than 15 days after the date we mail the notice.

(6) We will pay for covered loss or damage only if discovered no later than one year from the end of the Policy Period.

(7) If, during the period of any prior Employee Dishonesty insurance, you (or any predecessor in interest) sustained loss or damage that you could have recovered under that insurance, except that the time within which to discover loss or damage has expired, we will pay for it under this Additional Coverage, subject to the following:

(a) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(b) The loss or damage would have been covered by this insurance had it been in effect when the acts or events causing the loss or damage were committed or occurred.

(8) The insurance provided under paragraph (7) above is part of, not in addition to the Limit of Insurance applying to this Additional Coverage and is limited to the lesser of the amount recoverable under:

(a) This Additional Coverage, as of its effective date; or

(b) The prior Employee Dishonesty insurance, had it remained in effect.

e. **Expediting Expenses**

In the event of covered loss or damage, we will pay for the reasonable and necessary additional expenses you incur to make temporary repairs, expedite permanent repairs, or expedite permanent replacement at the premises sustaining loss or damage. Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation. Expediting expenses do not include expenses you incur for the temporary

rental of property or temporary replacement of damaged property.

The most we will pay under this Additional Coverage is $10,000 in any one occurrence.

f. **Extra Expense**

(1) We will pay the necessary and reasonable Extra Expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the premises described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the "suspension" of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocating expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the "suspension" of business if you cannot continue "operations".

(c) (i) To repair or replace any property; or

BUSINESSOWNERS

**(ii)** To research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**g. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

The amount payable under this Additional Coverage is in addition to the Limits of Insurance.

**h. Forgery or Alteration**

**(1)** We will pay for loss anywhere in the "coverage territory" resulting directly from "Forgery" or Alteration of, on, or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain money, made or drawn by or drawn upon you, or made or drawn by one acting as an agent or claiming to have been so made or drawn.

**(2)** The most we will pay for loss or damage in any one occurrence, including legal defense is the smallest of the following:

**(a)** The limit for Business Personal Property stated in the Declarations (If more than one building containing Business Personal Property is insured, the limit at the building having the highest Business Personal Property limit will apply.); or

**(b)** $250,000 (if the Business Personal Property limit at any one building is greater than this amount).

**(3)** Occurrence means all loss caused by any person or in which that person is concerned or implicated, either resulting from a single act or any number of such acts, whether the loss involves one or more instruments.

**(4)** We will pay for loss that you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**(5)** We will not pay for loss resulting from any dishonest or criminal acts committed by you or any of your partners, employees, directors or trustees whether acting alone or in collusion with other persons.

**(6)** We will pay for covered loss discovered no later than one year from the end of the Policy Period.

**(7)** If, during the period of any prior Forgery or Alteration insurance, you (or any predecessor in interest) sustained loss or damage that you could have recovered under that insurance, except that the time within which to discover loss or damage has expired, we will pay for it under this Additional Coverage provided:

**(a)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(b)** The loss or damage would have been covered by this insurance had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**(8)** The insurance provided under paragraph **(7)** above is part of, not in addition to the Limit of Insurance applying to this Additional Coverage

and is limited to the lesser of the amount recoverable under:

**(a)** This Additional Coverage up to the applicable Limit of Insurance under this Coverage Form, as of its effective date; or

**(b)** The prior Forgery or Alteration insurance, had it remained in effect.

**(9)** If you are sued for refusing to pay any covered instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount we will pay for these legal expenses will be part of and not in addition to the Limit of Insurance.

**i.   Increased Cost of Construction**

**(1)** This Additional Coverage applies only to buildings.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **i.(3)** through **i.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **i.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of building or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $5,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for under this Additional Coverage is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for under this Additional Coverage is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment – Building and Personal Property Property Loss Condition do not include the increased cost attributable to enforcement of an ordi-

nance or law. The amount payable under this Additional Coverage, as stated in **i.(6)** of this Additional Coverage, is not subject to such limitation.

**j. Pollutant Cleanup and Removal**

We will pay your necessary and reasonable expense to extract "pollutants" from land or water at the described premises, if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a "specified cause of loss" which occurs:

**(1)** On the described premises;

**(2)** To Covered Property; and

**(3)** During the policy period.

The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the "specified cause of loss" occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for loss at each described premises under this Additional Coverage is $10,000 in any one year commencing with policy inception.

The amount payable under this Additional Coverage is in addition to the Limits of Insurance.

**k. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for:

**(1)** Any direct physical loss or damage to this property:

    **(a)** While it is being moved or while temporarily stored at another location; and

    **(b)** Only if the loss or damage occurs within 30 days after the property is first moved; and

**(2)** The cost to remove and return the property from the described premises.

Coverage will end when any of the following first occurs:

**(1)** When the policy is amended to provide insurance at the new location;

**(2)** The property is returned to the original location; or

**(3)** This policy expires.

**l. Temporary Relocation of Property**

If Covered Property is removed from the described premises and stored temporarily at a location you own, lease or operate while the described premises is being renovated or remodeled, we will pay for loss or damage to that stored property:

**(1)** Caused by or resulting from a Covered Cause of Loss;

**(2)** Up to $50,000 at each temporary location; and

**(3)** During the storage period of up to 90 consecutive days but not beyond expiration of this policy;

unless the stored property is more specifically insured.

**m. Water Damage, Other Liquids, Powder or Molten Material**

If covered loss or damage caused by or resulting from water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect to a system or appliance from which the water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

MP T1 02 01 00

**7. Coverage Extensions**

Subject to the Exclusions, Conditions and Limitations of this form, you may extend this insurance as indicated below.

Unless otherwise stated, payments made under the following Coverage Extensions will not increase the applicable Limits of Insurance.

**a. Appurtenant Buildings and Structures**

You may extend the insurance that applies to your Buildings and Business Personal Property at the described premises, to cover direct loss in any one occurrence by a Covered Cause of Loss to incidental appurtenant buildings or structures, within 1,000 feet, including Business Personal Property within these buildings or structures. Incidental appurtenant buildings or structures include but are not limited to storage buildings, garages, pump houses, above ground tanks, which have not been specifically described in the Declarations.

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Buildings and 10% of the Limit of Insurance for Business Personal Property shown in the Declarations but not more than $50,000 combined Building and Business Personal Property in any one occurrence.

**b. Business Income and Extra Expense – Newly Acquired Locations**

(1) Your Business Income and Extra Expense Coverage is extended to apply to property at any location you acquire by purchase or lease (other than at fairs or exhibitions).

(2) The most we will pay under this Extension for the sum of Business Income and Extra Expense incurred is $250,000 at each location.

(3) Insurance under this extension for each newly acquired location will end when any of the following first occurs:

(a) This policy expires;

(b) 60 days expire after you acquire or begin to construct the property;

(c) You report the location to us; or

(d) The Business Income or Extra Expense is more specifically insured.

We will charge you additional premium for locations reported from the date you acquire the property.

**c. Business Personal Property Off Premises**

(1) Your Business Personal Property insurance is extended to apply to such property while it is in course of transit to and from the described premises or temporarily away from the described premises, if it is:

(a) Temporarily at a location you do not own, lease or operate; or

(b) At any fair, trade show or exhibition at a premises you do not own or regularly occupy.

(2) This Extension does not apply to property:

(a) While in the custody of the United States Postal Service;

(b) Rented or leased to others;

(c) After delivery to customers;

(d) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition; or

(e) Temporarily at a premises for more than 60 consecutive days, except "money" and "securities" at a "banking premises".

**d. Claim Data Expense**

The insurance under this extension will be in addition to the applicable Limits of Insurance.

The insurance provided by this Coverage Form is extended to apply to the reasonable expense you incur in preparing claim data when we require it. This includes the cost of taking inventories, making appraisals, preparing income statements, and preparing other documentation to show the extent of loss.

The most we will pay for preparation of claim data under this Extension is $1,000. We will not pay for any expenses incurred, directed or billed by or payable to claim adjusters or their associates or subsidiaries or any costs as provided by

in the Property Loss Condition – Appraisal.

**e. Exterior Building Glass**

(1) The insurance provided by this Coverage Form is extended to cover direct physical loss of or damage to glass, including glass breakage and damage to glass by chemicals accidentally or maliciously applied to glass:

(a) If the Building described in the Declarations is insured under this policy; or

(b) If only Business Personal Property is insured and coverage for glass is shown as included in the Declarations.

This coverage applies to all glass in the exterior walls of a described building (including all lettering and ornamentation) and supercedes all limitations in this policy that apply to such exterior building glass.

(2) We will also pay for necessary expenses incurred to:

(a) Put up temporary plates or board up openings;

(b) Repair or replace encasing frames; and

(c) Remove or replace obstructions.

(3) Section **A.5.b.** Limitations and Section **B.,** Exclusions, do not apply to this Extension except for:

(a) Governmental Action;

(b) Nuclear Hazard; and

(c) War and Military Action.

(4) We will not pay for loss or damage caused by or resulting from:

(a) Wear and tear;

(b) Hidden or latent defect;

(c) Corrosion; or

(d) Rust.

**f. Money Orders and Counterfeit Paper Currency**

Your Business Personal Property is extended to apply to loss due to the good faith acceptance of:

(1) Any U.S. or Canadian post office or express money order, issued or claiming to have been issued by any post office or express company, if the money order is not paid upon presentation; or

(2) Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

**g. Newly Acquired or Constructed Property**

The insurance under this Extension will be in addition to the applicable Limits of Insurance.

(1) Buildings

Insurance applies to:

(a) Your new buildings or additions while being built on the described premises or newly acquired premises, including materials, equipment, supplies and temporary structures, on or within 1,000 feet of the premises;

(b) Buildings you acquire at locations, other than the described premises; and

(c) Buildings you are required to insure under a written contract.

The most we will pay for loss or damage under this Extension is $250,000 at each location.

(2) Your Business Personal Property

(a) When a Limit of Insurance is shown in the Declarations for Business Personal Property, you may extend that insurance to apply to that type of property at a building you newly acquire:

(i) at a location described in the Declarations; and

(ii) at any other location you acquire by purchase of lease (other than at fairs, trade shows or exhibitions).

The most we will pay for loss or damage under this Extension is $250,000

in total at each newly acquired premises.

(3) Period Of Coverage

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 60 days expires after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**h. Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**i. Outdoor Property**

The insurance under this Extension will be in addition to the applicable Limits of Insurance.

The insurance provided by this Coverage Form is extended to apply to your outdoor property on the described premises as follows:

(1) Fences, retaining walls not part of a building, lawns (including fairways, greens and tees), trees, shrubs and plants (other than "stock" of trees, shrubs, or plants), bridges, walks, roadways, patios or other paved surfaces for loss or damage by the following Causes of Loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion; or

(e) Aircraft.

(2) Radio and television antennas (including Satellite dishes) for loss or damage by the Causes of Loss listed above and:

(a) Windstorm;

(b) Hail;

(c) Falling Objects;

(d) Vehicles;

(e) Sinkhole Collapse; or

(f) Volcanic Action

The most we will pay for loss or damage under this Extension is $5,000 at each described premises, but not more than $1,000 for any antenna.

**j. Personal Property and Effects**

Your Business Personal Property insurance is extended to apply to personal property and effects (other than Business Personal Property) owned by you, your officers, your partners or members, your managers or your employees.

Such property must be located on a premises described in the Declarations.

The most we will pay for loss or damage under this Extension is $5,000 at each described premises.

**k. Signs**

Your Building or Business Personal Property insurance is extended to cover outdoor signs attached to the building or on or within 1,000 feet of the described premises.

**l. Spoilage – Consequential Loss**

Your Business Personal Property Insurance is extended to cover consequential loss to your business personal property caused by change in temperature or humidity. However, the change must result from a Covered Cause of Loss damaging the following types of equipment situated within the building described in the Declarations:

Refrigerating, cooling, humidifying, air-conditioning, heating, generating or converting power; and connections, supply or transmission lines and pipes associated with the above equipment.

**m. Theft Damage to Rented Property**

Your Business Personal Property insurance is extended to cover damage by theft or attempted theft to that part of a building you occupy and which contains:

**(1)** Business Personal Property; or

**(2)** Equipment within the building used for maintenance or service of the building.

We will not pay for damage:

**(a)** Caused by or resulting from fire or explosion; or

**(b)** To glass or glass lettering.

This Extension applies only to a building where you are a tenant and are liable for such damage.

**n. Valuable Papers and Records – Cost of Research**

The insurance under this extension will be in addition to the applicable Limits of Insurance.

Your Business Personal Property insurance is extended to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $1,000 at each described premises.

**B. EXCLUSIONS**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any building, including the cost of removing its debris.

This exclusion applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

**MP T1 02 01 00**

But if Earth Movement, as described in **b. (1)** through **b.(4)** above results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion of effusion results in fire or volcanic action, we will pay for the loss or damage caused by that fire or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano, when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust, or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168–hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and done at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure or fluctuation of power or other utility service supplied to the described premises, however caused, if the cause

of the failure or fluctuation occurs away from the described premises.

But if the failure or fluctuation of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage resulting from that Covered Cause of Loss.

**f. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3) (a)** Water or sewage that backs up or overflows from a sewer, drain or sump.

**(b)** Except for septic tanks, cesspool systems and exterior drains, this exclusion does not apply when the cause of the water back-up or sewage overflow occurs due to a blockage which originates on the described premises.

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in **B.1.g.(1)** through **(4)** results in fire, explosion or sprinkler leakage, we will pay for the loss

or damage caused by that fire, explosion or sprinkler leakage.

**h. Neglect**

Neglect of an insured to use reasonable means to save and preserve property from further damage at and after the time of loss.

**i. Collapse of Buildings**

Collapse of buildings meaning an abrupt falling down or caving in of a building or substantial part of a building with the result being that the building or substantial part of a building cannot be occupied for its intended purpose.

(1) This exclusion does not apply to collapse of buildings if caused only by one or more of the following:

  (a) A "specified cause of loss";

  (b) Decay, insect or vermin damage that is hidden from view, unless the presence of such decay or insect or vermin damage is known to an insured prior to collapse;

  (c) Weight of people or personal property;

  (d) Weight of rain that collects on a roof; or

  (e) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation; or

  (f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in **i.(1) (a)** through **(d)** above.

In the event collapse results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage by that Covered Cause of Loss.

(2) We will not pay for loss of or damage to the following types of property, if otherwise covered in this policy, under items **i.(1)(b)** though **i.(1)(f)** above, unless the loss or damage is

a direct result of the collapse of a building:

> awnings, gutters and downspouts, yard fixtures and outdoor swimming pools.

If collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

(3) A building or portion of a building that:

  (a) Is in imminent danger of abruptly falling down or caving in; or

  (b) Suffers a substantial impairment of structural integrity;

  is not considered a collapse but is considered to be in a state of imminent collapse.

(4) As respects buildings in a state of imminent collapse, the Company will not pay for loss or damage unless the state of imminent collapse first manifests itself during the policy period and is caused only by one or more of the following which occurs during the policy period:

  (a) Fire; lightning; explosion; windstorm or hail; aircraft or vehicles; riot or civil commotion; "sinkhole collapse"; weight of snow, ice or sleet;

  (b) Weight of people or personal property;

  (c) Weight of rain that collects on a roof; or

  (d) Use of defective material or methods in construction, remodeling or renovation if the state of imminent collapse occurs during the course of construction, remodeling or renovation.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

  **a.** Artificially generated electrical current, including electric arcing that disturbs electrical devices, appliances or wires unless caused by a "specified cause of loss".

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** **(1)** Wear and tear;

**(2)** Rust, corrosion, fungus, decay, deterioration, wet or dry rot, mold, hidden or latent defect of any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical or machinery breakdown (including rupture or bursting caused by centrifugal force). This exclusion does not apply to resultant loss or damage by fire, building glass breakage or elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature;

**(c)** Marring or scratching;

**(d)** Evaporation, loss of weight, exposure to light or change in flavor, color, texture or finish;

**(e)** Leakage; or

**(8)** Contamination.

But if an excluded cause of loss that is listed in **2.d.(1), 2.d.(2), 2.d.(3), 2.d.(4), 2.d.(5), 2.d.(7), 2.d.(8)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control unless caused by a "specified cause of loss". But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water or other liquids that occurs over a period of 14 days or more.

**g.** Water, other liquid, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the water supply if the heat is not maintained.

**h.** Dishonest or criminal acts by you, or any of your partners, "employees", directors or trustees:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your "employees", but "theft" by "employees" is not covered except as provided under the Employee Dishonesty Additional Coverage.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense by any person who is not an "employee".

This exclusion does not apply to property in the custody of carriers for hire.

**j.** Rain, snow, sand, dust, ice or sleet to personal property in the open.

**k.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the release, discharge or dispersal is itself caused by any of the "specified causes of loss". But if the discharge, dis-

persal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**l.** Default on any credit sale, loan, or similar transaction.

**m.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This exclusion does not apply to "money" and "securities".

**n.** Loss of property or that part of any loss, the proof of which as to its existence or amount is dependent on:

(1) Any inventory computation; or

(2) A profit and loss computation.

**o.** The transfer of property to a person or to a place outside the described premises on the basis of unauthorized instructions. This exclusion does not apply to loss or damage from "employee dishonesty".

**p.** Loss of "money" or "securities" caused by or resulting from accounting or arithmetic errors or omissions.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, but if an excluded cause of loss that is listed in **3.a.** through **3.c.** below results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **B.1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

**4. Business Income and Extra Expense Exclusions**

We will not pay for:

**a.** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference by strikers or other persons at the location of the rebuilding, repair or replacement; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and the period of extended Business Income.

**b.** Any other consequential loss.

**C. LIMITS OF INSURANCE**

**1.** Unless otherwise stated, the most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, Schedules, Coverage Forms, or endorsements.

**2. Inflation Guard**

**a.** When so indicated in the Declarations, the Limit of Insurance for property to which this coverage applies will automatically increase by the annual percentage shown.

**b.** The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, multiplied by

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**MP T1 02 01 00**

Example:

If:

The applicable Building limit is

$100,000

The annual percentage increase is

8%

The number of days since the beginning of the policy year (or last policy change) is

146

The amount of increase is

$100,000 x .08 x (146/365) = $3,200

3. **Business Personal Property Limit – Seasonal Increase**

   a. The Limit of Insurance for Business Personal Property shown in the Declarations will automatically increase by 25% to provide for seasonal variations.

   b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss or damage occurs; or

      (2) The period of time you have been in business at the location where the loss or damage occurs, on the date the loss or damage occurs.

## D. DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of covered loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the Exterior Building Glass Extension of Coverage in any one occurrence is the Exterior Building Glass Deductible shown in the Declarations. But this Exterior Building Glass Deductible will not increase the deductible shown in the Declarations.

3. No deductible applies to the following:

   a. Fire Department Service Charge;

   b. Business Income (including Extra Expense and Civil Authority);

   c. Money Orders and Counterfeit Paper Currency;

   d. Arson and Theft Reward; or

   e. Valuable Papers.

4. If more than one deductible applies to the same loss, the most we will deduct from the loss payment is the highest deductible amount.

## E. PROPERTY LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   a. You must see to it that the following are done upon the discovery of loss or damage, or a situation that may lead to loss or damage, to Covered Property:

      (1) Notify the police if a law may have been broken. This duty does not apply to loss or damage arising from Employee Dishonesty and Forgery or Alteration.

      (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) For loss or damage from other than Employee Dishonesty and Forgery or Alteration send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) For loss or damage resulting from Employee Dishonesty and Forgery or Alteration, give us a detailed, sworn proof of loss within 120 days of the date of discovery.

(9) Cooperate with us in the investigation and settlement of the claim.

(10) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment — Building and Personal Property**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **4. e.** below or any applicable provision which amends or supersedes the value of Covered Property.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We will determine the value of Covered Property as follows:

(1) At replacement cost (without deduction for depreciation), except as provided in **(2)** through **(13)** below.

(a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a

replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**i.** Until the lost or damaged property is actually repaired or replaced; and

**ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterment's, the following also applies:

**(i)** If the conditions in **(b) i.** and **(b) ii.** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth under **4.e.(6)** below; and

**(ii)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of **i., ii.** or **iii.** subject to **(d)** below:

**i.** The Limit of Insurance applicable to the lost or damaged property;

**ii.** The cost to replace the lost or damaged property with other property:

**(iii)** Of comparable material and quality; and

**(iv)** Used for the same purpose; or

**iii.** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **(c) ii.** above is limited to the cost

which would have been incurred if the building had been rebuilt at the original premises.

**(d)** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Declarations indicate that Actual Cash Value applies to Buildings or Business Personal Property, paragraph **(1)** above does not apply to the property for which Actual Cash Value is indicated.

**(3)** Property of others at the amount you are liable plus the cost of labor, materials or services furnished or arranged by you on personal property of others, not to exceed the replacement cost.

**(4)** The following property at actual cash value:

**(a)** Used or second-hand merchandise held in storage or for sale;

**(b)** Household furnishings;

**(c)** Manuscripts;

**(d)** Works of art, antiques or rare articles including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; and

**(e)** Personal effects.

**(5)** Glass at the cost of replacement with safety glazing material if required by law.

**(6)** Tenants' Improvements and Betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**i.** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**ii.** Divide the amount determined in **i.** above by the number of days from the in-

stallation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing, if others pay for repairs or replacement.

**(7)** Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

**(a)** Blank materials for reproducing the records; and

**(b)** Labor to transcribe or copy the records.

**(8)** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**(9)** Property in transit (other than "stock" you have sold) at the amount of invoice, including your prepaid or advanced freight charges and other charges which may have accrued or become legally due since the shipment. If you have no invoice, actual cash value will apply.

**(10)** "Money" at its face value; and

**(11)** "Securities" at their value at the close of business on the day the loss is discovered.

**(12)** The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

**(a)** Distilled spirits;

**(b)** Wines;

**(c)** Rectified products; or

**(d)** Beer.

**(13)** Lottery tickets at their initial cost to you except for winning tickets at their redeemed value.

**f.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do so at our expense.

**h.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss provided you have complied with all of the terms of this policy; and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**i.** At our option, we may make a partial payment toward any claims, subject to the policy provisions and our normal adjustment process. To be considered for partial claim payment, you must submit a partial sworn proof of loss with supporting documentation. Any applicable policy deductibles must be satisfied before any partial payments are made.

**5.** **Loss Payment – Business Income and Extra Expense**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage occurred, but not including any likely increase in Net Income attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

    (a) Your financial records and accounting procedures;

    (b) Bills, invoices and other vouchers; and

    (c) Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

(1) All reasonable and necessary expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

    (a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

    (b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All reasonable and necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c.** Upon resumption of your "operations", we will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**e.** We will pay for covered loss or damage within 30 days after we receive your sworn proof of loss provided you have complied with all of the terms of this policy; and

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice.

**a.** For all loss other than by Employee Dishonesty and Forgery or Alteration, you have the option to retain the recovered property. If you do retain the property you must then return to us the amount we paid to you for the property.

(1) We will pay:

    (a) Recovery expenses; and

    (b) Costs to repair the covered property.

(2) But, the most we will pay is the smallest of the following:

    (a) The total of (1)(a) and (b) above;

    (b) The value of the recovered property; or

    (c) The Limit of Insurance.

**b.** In all other instances, recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

(2) Then to us, until we are reimbursed for the settlement made;

(3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

**c.** Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

BUSINESSOWNERS

**7. Noncumulative Limit**

No Limit of Insurance cumulates from policy period to policy period.

**F. COMMERCIAL PROPERTY CONDITIONS**

**1. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The Covered Property;

**c.** Your interest in the Covered Property; or

**d.** A claim under this Coverage Form.

**2. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**3. Insurance Under Two or More Coverages.**

If two or more coverages under this Coverage Form apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form unless:

**a.** There has been full compliance with all of the terms of this Coverage Form; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**c.** For Employee Dishonesty and Forgery or Alteration losses, the following additional conditions apply:

You may not bring any legal action against us involving loss until 90 days after you have filed proof of loss with us; and unless brought within 2 years from the date you discover the loss.

**5. Liberalization**

If we adopt any revision that would broaden the coverage under this Coverage Form without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Form.

**6. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**7. Other Insurance**

**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same loss or damage, other than that described in **7.a.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**8. Policy Period, Coverage Territory**

Under this Coverage Form:

**a.** We cover loss or damage you sustain through acts committed or events occurring:

**(1)** During the policy period shown in the Declarations (except as provided by the provisions of the Employee Dishonesty and Forgery or Alteration Additional Coverages);

**(2)** Within the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**9. Transfer of Rights of Recovery Against Others to Us.**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent

**MP T1 02 01 00**

of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property or Covered Income.

**b.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **(1)** Someone insured by this insurance;

    **(2)** A business firm:

        **(a)** Owned or controlled by you; or

        **(b)** That owns or controls you; or

    **(3)** Your tenant.

    This will not restrict your insurance.

### 10. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss multiplied by the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

    **(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

    **(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

    **(3)** Multiply the total amount of the covered loss, before the application of any deductible, by the figure determined in step **(2)**; and

    **(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the limit of insurance, whichever is less.

For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Under insurance):**

When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percent for it is | 90% |
| The Limit of Insurance for it is | $112,500 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $112,500/$225,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 90% |
| The Limit of Insurance for it is | $225,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $225,000 ($250,000 x 90%).

Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** Coinsurance does not apply to:

    **(1)** "Money" and "securities";

    **(2)** Additional Coverages;

    **(3)** Coverage Extensions; or

    **(4)** Loss or damage in any one occurrence totaling less than $2,500.

### 11. Mortgageholders

**a.** The term, mortgageholder, includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mort-

gageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership or occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Form will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   **(2)** The mortgageholder's rights to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. PROPERTY DEFINITIONS**

**1.** **"Banking Premises"** means the interior of that portion of any building which is occupied by a banking institution or similar safe depository.

**2. a.** **"Employee(s)"** means:

   **(1)** Any natural person:

     **(a)** While in your service (and for 30 days after termination of service); and

     **(b)** Whom you compensate directly by salary, wages or commissions; and

     **(c)** Whom you have the right to direct and control while performing services for you.

   **(2)** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises.

   **(3)** Your directors or trustees while acting as a member of any of your elected or appointed committees to perform on your behalf specific, as distinguished from general, directorial acts.

**b.** But "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

**3.** **"Employee Dishonesty"** means only dishonest acts, committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

**a.** Cause you to sustain loss; and also

**b.** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions


EXHIBIT
1-B

or other employee benefits earned in the normal course of employment) for:

(1) The "employee"; or

(2) Any person or organization intended by the "employee" to receive that benefit.

4. **"Forgery"** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity for any purpose.

5. **"Interior of any building or structure"** as used in this policy means all portions of the structure that are within the exterior skin of the structure's walls and roof, including but not limited to lathe, sand paper, framing, wallboard and tarpaper.

6. **"Maintenance Fees"** means the regular payment made to you by unit-owners and used to service the common property.

7. **"Messenger"** means you, and any of your partners or any "employees" while having care and custody of the property outside the premises.

8. **"Money"** means currency and coins in current use, bank notes, travelers checks, register checks and money orders held for sale to the public.

9. **"Operations"** means your business activities occurring at the described premises; and if Business Income coverage for "Rental Value" applies, the tenantability of the described premises.

10. **"Period of Restoration"** means the period of time that:

a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required

due to the enforcement of any law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

The expiration date of this policy will not cut short the "period of restoration".

11. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and any unhealthful or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead.). Waste includes materials to be recycled, reconditioned or reclaimed.

12. **"Rental Value"** means the:

a. Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you; and

b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

c. Fair rental value of any portion of the described premises which is occupied by you.

13. **"Securities"** means all negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes revenue or other stamps in current use, tokens, tickets and credit card slips for sales made by you and held by you for reimbursement from companies issuing credit cards, but does not include "money". Lottery tickets held for sale are not securities.

14. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the ac-

tion of water on limestone or dolomite. It does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into underground man-made cavities.

**b.** Falling objects does not include loss of or damage to:

   **(1)** Personal Property in the open; or

   **(2)** The "interior of a building or structure", or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**15. "Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**16. "Suspension"** means:

**a.** The partial or complete cessation of your business activities; and

**b.** That a part or all of the described premises is rendered untenantable, if coverage for "Rental Value" applies.

**17. "Theft"** means any act of stealing but excluding dishonest acts by "employees" and "Forgery" or Alteration.

**18. "Vacant"** means the following:

   **(1)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operation.

   **(2)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

     **(a)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

     **(b)** Used by the building owner to conduct customary operations.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY PROVISIONS
# CONDOMINIUM ASSOCIATION COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART

A. Paragraph **A.1.a. Building** in the BUSINESS-OWNERS PROPERTY COVERAGE FORM is replaced by the following:

a. **Building,** meaning the building or structure described in the Declarations, including:

   (1) Completed additions;

   (2) Fixtures, outside of individual units, including outdoor fixtures;

   (3) Permanently attached:

       (a) Machinery; and

       (b) Equipment;

   (4) Personal Property owned by you that is used to maintain or service the building or structure; or its grounds, including:

       (a) Fire Extinguishing equipment;

       (b) Outdoor Furniture;

       (c) Lobby and hallway furnishings;

       (d) Floor, wall and ceiling coverings;

       (e) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

       (f) Lawn maintenance or snow removal equipment;

       (g) Personal Property used for maintaining and servicing of pools and other recreational facilities on the premises; and

   (5) Outdoor swimming pools, associated structures and appurtenant structures and equipment, including pumps.

   (6) If not covered by other insurance:

       (a) Alterations and repairs to the building or structure;

       (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making alterations or repairs to the building or structure.

   (7) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

       (a) Fixtures, improvements and alterations that are part of the building or structure; and

       (b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

   But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in paragraph **A.1.a.(7)** above.

b. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, owned:

   (1) By you; or

   (2) Indivisibly by all unit-owners.

   This includes your interest in the labor, materials or services furnished or arranged by you on personal property of others.

   Business Personal Property does not include personal property owned only by a unit-owner, unless it is in your care, custody or control as covered below.

   This also includes property of others that is in your care, custody or control; but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others, not to exceed the replacement cost.

B. The insurance provided under paragraph **A.6.d. Employee Dishonesty** in the BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is amended by replacing item **d.(2)** with the following:

**(2)** The most we will pay for loss or damage in any one occurrence is $25,000.

**C.** The insurance provided under paragraph **A.6.h. Forgery or Alteration** in the BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is amended by replacing item **h.(2)** with the following:

**(2)** The most we will pay for loss or damage in any one occurrence is $25,000.

**D.** The following is added to the Additional Coverage **A.6.c. Debris Removal:**

**(6)** We will pay to remove debris of live trees which have fallen on the described premises:

**(a)** Up to a maximum of $1,000 in any one occurrence;

**(b)** Caused by or resulting from windstorm; and

**(c)** Subject to the policy deductible.

**E.** Paragraph **A.7.i.(1) Outdoor Property** in the BUSINESSOWNERS PROPERTY COVERAGE FORM is amended as follows:

The following Covered Causes of Loss are added for fences:

**(f)** windstorm; and

**(g)** vehicles.

**F.** The following are added to item **C. LIMITS OF INSURANCE** of the BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM:

**1.** **"Money" and "Securities":**

**a.** A special Limit of Insurance of $25,000 per "occurrence" applies to all loss of "money" and "securities" except by "employee dishonesty" and "forgery" or alteration.

**b.** This special Limit of Insurance applies even if the Declarations shows a lower limit or no limit of insurance for Business Personal Property. If the Declarations shows a higher Limit of Insurance for Business Personal Property, this special limit is the most that we will pay for each "occurrence".

**c.** "Occurrence" as used in paragraphs **a.** and **b.** above means: all loss caused by or involving the same person(s) whether the result of a single act or a series of related acts.

**d.** The above provisions do not effect the Additional Coverages – Employee Dishonesty and Forgery or Alteration.

**2.** **Theft of Business Personal Property (Other Than "Money" and "Securities"):**

**a.** A special Limit of Insurance of $25,000 per "occurrence" applies to loss by "theft" of Business Personal Property (other than "money" and "securities"), except by "employee dishonesty" and "forgery" or alteration.

**b.** This special Limit of Insurance applies even if the Declarations shows a lower limit or no limit of insurance for Business Personal Property. If the Declarations shows a higher Limit of Insurance for Business Personal Property, this special limit is the most that we will pay for each "occurrence".

**c.** "Occurrence" as used in paragraphs **a.** and **b.** above means: all loss caused by or involving the same person(s) whether the result of a single act or a series of related acts.

**d.** The above provisions do not effect the Additional Coverages – Employee Dishonesty and Forgery or Alteration.

**G.** The following is added to item **E. PROPERTY LOSS CONDITIONS** of the BUSINESSOWNERS PROPERTY COVERAGE FORM:

**8.** **Unit-Owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

**9.** **Insurance Trustee**

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

**H.** The following is added to **SECTION II – WHO IS AN INSURED** of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

**5.** Each individual unit-owner of the insured condominium, but only for liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit-owner's exclusive use or occupancy.

**I.** The following is added to **Transfer of Rights of Recovery Against Others to Us:**

**Waiver of Rights of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations, except for "employee dishonesty" and "forgery" or alteration.

**MP T1 03 01 00**

BUSINESSOWNERS
POLICY NUMBER: I-680-5076B416-TCT-04                                    ISSUE DATE: 11-16-04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGUS, ROT, BACTERIA AND OTHER CAUSES OF LOSS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE PART

**A. SCHEDULE**

**Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage:**

**Direct Damage Limit of Insurance**

$15,000    **OR**    ☐ $25,000    ☐ $50,000    ☐ $100,000    ☐ $250,000

**B.** The EXCLUSIONS contained in Section **B.** of the BUSINESSOWNERS PROPERTY COVERAGE FORM are amended as follows:

**1.** The following exclusion is added to **B.1.**:

**"Fungus", Wet Rot, Dry Rot and Bacteria**

**a.** We will not pay for loss or damage, or any increase in the amount of loss or damage, caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage – Limited "Fungus", Wet Rot, Dry Rot and Bacteria in Section **C.1.** below of this endorsement with respect to loss or damage by a cause of loss other than fire or lightning.

**2.** The exclusions contained in **B.2.** are amended as follows:

**a.** Under exclusion **B.2.d.(2)**, reference to fungus, wet or dry rot, mold is deleted.

**b.** Exclusion **B.2.f.** is deleted and replaced by the following:

We will not pay for loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more.

**C.** The Additional Coverages contained in Section **A.6.** of the BUSINESSOWNERS PROPERTY COVERAGE FORM are amended as follows:

**1.** The following Additional Coverage is added:

**Additional Coverage – Limited "Fungus", Wet Rot, Dry Rot and Bacteria**

**a.** The coverage described in **b.** and **c.** below only applies when the "fungus", wet or dry rot or bacteria is the result of a "specified cause of loss", other than fire or lightning, that occurs during the policy period and only if all reasonable means have been used to save and preserve the property from further damage at the time of and after that occurrence.

**b.** Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage

**(1)** We will pay for direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including:

**(a)** The cost of removal of the "fungus", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that

"fungus", wet or dry rot or bacteria are present.

**(2)** The coverage described in **b.(1)** above is limited to $15,000, or the limit of insurance shown in the Schedule of this endorsement for Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage under this coverage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of this annual limit even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**(3)** The coverage provided under this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more for the total of all loss or damage than the applicable Limit of Insurance on the Covered Property.

**(4)** If there is covered loss or damage to Covered Property that is not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage.

**c.** Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Business Income and Extra Expense

The following Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage provisions for Business Income and Extra Expense apply only if Business Income and/or Extra Expense coverage applies to the described premises and only if the suspension of "operations" satisfies all of the terms of the applicable Business Income and/or Extra Expense coverage:

**(1)** If the loss which results in the "fungus", wet or dry rot or bacteria does not in itself necessitate a suspension of "operations", but such suspension of "operations" is necessary due to loss or damage to property at the described premises caused by "fungus", wet or dry rot or bacteria, then our payment for Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(2)** If a covered suspension of "operations" is caused by loss or damage at the described premises by other than "fungus", wet or dry rot or bacteria, but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay, regardless of when such a delay occurs during the "period of restoration", but such coverage is limited to 30 days. The days need not be consecutive.

The coverage provided under this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Business Income and Extra Expense is included in, and not in addition to any limit or description of coverage for Business Income shown on the Businessowners Coverage Part Declarations or under the Extra Expense Additional Coverage.

**d.** The terms of this Limited Coverage do not increase or reduce the coverage under the Water Damage, Other Liquids, Powder or Molten Damage Additional Coverage Extension or the coverage provided for collapse of buildings or structures under the Collapse of Buildings exclusion.

**D.** The DEFINITIONS contained in Section **G.** are amended as follows:

**1.** The definition of "Specified Causes of Loss" is deleted and replaced by the following:

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse as defined below; volcanic action; falling objects as limited below; weight of snow, ice or sleet; and water damage as defined below; all only as otherwise insured against in this Coverage Form.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The "interior of a building or structure", or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

When the Causes of Loss – Earthquake endorsement, Causes of Loss – Earthquake Sprinkler Leakage endorsement or Causes of Loss – Broad Form Flood endorsement is included in this policy, "specified causes of loss" also includes such cause of loss, but only to the extent such cause of loss is insured against under this Coverage Form.

**2.** The following definition is added:

**"Fungus"** means any type or form of fungus, including but not limited to mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**E.** Ordinance or Law Coverage Change

Under:

**1.** The ordinance or law coverage in Section **A.6.i.** Increased Cost of Construction of the Businessowners Property Coverage Form;

**2.** Ordinance or Law Coverage endorsement MP T3 15; and

**3.** Any other Ordinance or Law coverage or Ordinance or Law – Increased "Period of Restoration" coverage provided under this Coverage Part;

the following exclusion is added:

This coverage does not apply to:

**a.** Loss caused by or resulting from the enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**b.** Costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "fungus", wet or dry rot or bacteria.

BUSINESSOWNERS
POLICY NUMBER: I-680-5076B416-TCT-04                                    ISSUE DATE: 11-16-04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS ENDORSEMENT FOR SPRINKLERED LOCATIONS AND RESTAURANTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART

**SCHEDULE***

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable | Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|-----------|-----------|------------------------------------------|-----------|-----------|------------------------------------------|
| 01 | 01 | P1 | | | |

1. The following is added to the:

   BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM
   BUSINESSOWNERS PROPERTY COVERAGE STANDARD FORM

   **PROTECTIVE SAFEGUARDS**

   a. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

   b. The protective safeguards to which this endorsement applies are identified by the following symbols:

      **"P-1"**    **Automatic Sprinkler System,** including related supervisory services.

      Automatic Sprinkler System means:

      (1) Any automatic fire protective or extinguishing system, including connected:

         (a) Sprinklers and discharge nozzles;

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations

**(b)** Ducts, pipes, valves and fittings;

**(c)** Tanks, their component parts and supports; and

**(d)** Pumps and private fire protection mains.

**(2)** When supplied from an automatic fire protective system:

**(a)** Non-automatic fire protective systems; and

**(b)** Hydrants, standpipes and outlets.

**"P-9"** Protective system covering cooking surface as described in application for insurance on file with the company

**2.** The following is added to the EXCLUSION section of:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM
BUSINESSOWNERS PROPERTY COVERAGE STANDARD FORM

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**a.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**b.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Includes Material Copyrighted by Insurance Services Office, Inc.
ISO Commercial Risk Services, Inc.

**MP T3 07 03 97**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TERRORISM RISK
# INSURANCE ACT OF 2002 DISCLOSURE

This endorsement applies to the insurance provided under the following:

BUSINESSOWNERS COVERAGE PART

On November 26, 2002, the President of the United States signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of *"Insured Losses"* caused by certain *"Acts of Terrorism"* (each as defined in the Act).

In the event of an *Insured Loss*, each *"Insurer"* (as defined in the Act) is responsible for a deductible of one percent (1%) of its *"Direct Earned Premium"* (as used in the Act) for the calendar year 2001 *for Insured Losses* occurring from November 26, 2002 through December 31, 2002; seven percent (7%) of its *Direct Earned Premium* for the calendar year 2002 for *Insured Losses* occurring during calendar year 2003; ten percent (10%) of its *Direct Earned Premium* for the calendar year 2003 for *Insured Losses* occurring during calendar year 2004; or fifteen percent (15%) of its *Direct Earned Premium* for the calendar year 2004 for *Insured Losses* occurring during calendar year 2005. The Federal Government's share of compensation for *Insured Losses* in each year is 90% of the amount of *Insured Losses* in excess of each *Insurer's* deductible for that year. The *Insurer* is responsible for the payment of the remaining 10% of *Insured Losses*. In no event, however, will the Federal Government or any *Insurer* be required to pay any portion of the amount of aggregate *Insured Losses* occurring in any one year that exceeds $100,000,000,000, provided that such *Insurer* has met its deductible.

As a requirement of the Act, *Insurers* must make available *"Property and Casualty Insurance"* (as defined in the Act) coverage for *Insured Losses* that does not differ materially from the terms, amounts and other coverage limitations that apply to losses arising from events other than *Acts of Terrorism*. In other words, a loss will not be excluded just because it was caused by an *Act of Terrorism;* conversely, a loss will not be covered just because it was caused by an *Act of Terrorism*. The Act also requires *Insurers* to disclose to policyholders the premium charge for providing such terrorism coverage.

Please note that this Coverage Part does not contain an exclusion that specifically excludes coverage for *Insured Losses*. The charge for this exposure is included in the Coverage Part premium. The charge that has been included for this Coverage Part is:

- 4% of your total policy premium if your primary location is in a Designated City (as listed below).

- 2% of your total policy premium if your primary location is not in a Designated City (as listed below).

**Designated Cities are:**

| | | | |
|---|---|---|---|
| Albuquerque, NM | El Paso, TX | Miami, FL | San Diego, CA |
| Atlanta, GA | Fort Worth, TX | Milwaukee, WI | San Antonio, TX |
| Austin, TX | Fresno, CA | Minneapolis, MN | San Francisco, CA |
| Baltimore, MD | Honolulu, HI | Nashville-Davidson, TN | San Jose, CA |
| Boston, MA | Houston, TX | New Orleans, LA | Seattle, WA |
| Charlotte, NC | Indianapolis, IN | New York, NY | St. Louis, MO |
| Chicago, IL | Jacksonville, FL | Oakland, CA | Tucson, AZ |
| Cleveland, OH | Kansas City, MO | Oklahoma City, OK | Tulsa, OK |
| Colorado Springs, CO | Las Vegas, NV | Omaha, NE | Virginia Beach, VA |
| Columbus, OH | Long Beach, CA | Philadelphia, PA | Washington, DC |
| Dallas, TX | Los Angeles, CA | Phoenix, AZ | Wichita, KS |
| Denver, CO | Memphis, TN | Portland, OR | |
| Detroit, MI | Mesa, AZ | Sacramento, CA | |

**MP T3 25 10 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POWER PAC ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART

A. The BUSINESSOWNERS PROPERTY COVER-AGE – SPECIAL FORM is revised as follows:

1. The limit applicable to the **Additional Coverage – Pollutant Cleanup and Removal** is increased from $10,000 to $25,000.

2. The limit applicable to the **Additional Coverage – Fire Department Service Charge** is increased from $1,000 to $10,000.

3. The following **Additional Coverages** are added:

   a. **Brands or Labels**

   If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or part of the property at an agreed or appraised value. If so, you may:

   (1) Stamp the word "Salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

   (2) Remove the brands and labels, if doing so will not physically damage the merchandise or its containers to comply with the law.

   We will pay reasonable costs you incur to perform the activity described in **a.(1)** and **a.(2)** above. The most we will pay for these costs and the value of the damaged property under this Additional Coverage is $25,000.

   b. **Fire Protective Equipment Discharge**

   If fire protective equipment discharges accidentally or to control a Covered Cause of Loss we will pay your cost to:

   (1) refill or recharge the system with the extinguishing agents that were discharged; and

   (2) replace or repair faulty valves or controls which caused the discharge.

   The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

This amount is in addition to the Limits of Insurance.

c. **Lost Key Consequential Loss**

   (1) We will pay for consequential loss to keys and locks if a master or grand master key is lost or damaged from a Covered Cause of Loss. We will pay for:

   (a) the actual cost of keys, and

   (b) adjustment of locks to accept new keys, or

   (c) if required, new locks including cost of their installation.

   (2) Loss or damage must be caused by or result from a Covered Cause of Loss including mysterious disappearance.

   (3) The most we will pay for loss or damage under this Additional Coverage is $500 at each described premises.

This amount is in addition to the Limits of Insurance.

d. **Ordinance or Law – Increased Cost of Construction or Repair**

   If a Covered Cause of Loss occurs to covered Building Property insured under this policy at a described premises, we will pay the increased cost to repair, rebuild or construct the damaged building caused by enforcement of a building, zoning or land use ordinance or law which is in force at the time of loss. The repaired or rebuilt building must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

   We will not pay under this Additional Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of

**MP T9 70 01 00**                                                    Page 1 of 5

"pollutants" and asbestos whether or not such asbestos is deemed to be a "pollutant".

We will not pay for increased construction costs until the building is actually repaired or replaced, at the same or another premises.

We will not pay under this coverage for loss due to any ordinance or law which:

**(1)** You were required to comply with before the loss, even if the building was undamaged; and

**(2)** You failed to comply with.

The most we will pay for loss under this Additional Coverage is $25,000 in any one occurrence.

This amount is in addition to the Limits of Insurance.

**e. Utility Services – Direct Damage**

We will pay for loss or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

**(1)** Water Supply Services, meaning the following types of property supplying water to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2)** Communication Supply Services, meaning property supplying communications service, including telephone, radio, microwave, or television services to the described premises, such as

**(a)** Communication transmission lines except overhead transmission lines including fiber optic transmission lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, except satellites.

**(3)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Transformers; and

**(d)** Transmission lines, except overhead transmission lines.

The most we will pay for loss or damage under this Additional Coverage is $2,500.

**4.** The following **Additional Coverages** are added when **Business Income** is included:

**a. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss or damage at the premises of a "dependent property", caused by or resulting from a Covered Cause of Loss.

"Dependent Property" means property operated by others you depend on to:

**(a)** Deliver materials or services (other than water, communications or power supply) to you, or to others for your account (Contributing Locations);

**(b)** Accept your products or services (Recipient Locations);

**(c)** Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

**(d)** Attract customers to your business (Leader Locations).

**(2)** The Period of Restoration definition with respect to "dependent property", is replaced by the following:

"Period of Restoration" means the period of time that:

**(a)** Begins 24 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

**(b)** Ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with

reasonable speed and similar quality.

(3) "Period of Restoration" does not include any enforcement of any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or required the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The most we will pay under this Additional Coverage is $25,000.

b. **Ordinance or Law – Increased "Period of Restoration"**

(1) If a Covered Cause of Loss occurs to property at the premises described in the Declarations, Business Income coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of an ordinance or law that:

(a) Regulates the construction or repair of any property; and

(b) Is in force at the time of loss.

However, coverage is not extended to include loss caused by or resulting from the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", and asbestos whether or not such asbestos is deemed to be a "pollutant".

(2) We will not pay under this coverage for loss due to any ordinance or law which:

(a) You were required to comply with before the loss, even if the building was undamaged; and

(b) You failed to comply with.

The most we will pay for loss under this Additional Coverage is $25,000 in any one occurrence.

c. **Utility Services – Time Element**

We will pay for the loss of Business Income and/or Extra Expense you sustain due to the necessary "suspension" of your "operations" during the "period of restoration" as a result of direct physical loss or damage by a Covered Cause of Loss to property not at the premises described in the Declarations but used to supply you with services by the following utilities:

(1) Water Supply Services, meaning the following types of property supplying water to the described premises:

(a) Pumping stations; and

(b) Water mains.

(2) Communication Supply Services, meaning property supplying communications service, including telephone, radio, microwave, or television services to the described premises, such as:

(a) Communication transmission lines except overhead transmission lines including fiber optic transmission lines;

(b) Coaxial cables; and

(c) Microwave radio relays, except satellites.

(3) Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

(a) Utility generating plants;

(b) Switching stations;

(c) Substations;

(d) Transformers; and

(e) Transmission lines, except overhead transmission lines.

The most we will pay is $2,500 for loss you sustain after the first 24 hours following the direct physical loss or damage by a Covered Cause of Loss that disrupted the services provided by the utility companies described above.

5. The following **Coverage Extensions** are revised as follows:

a. **Business Income and Extra Expense – Newly Acquired Locations**

The limit of $250,000 is increased to $500,000.

b. **Claim Data Expense**

The limit of $1,000 is increased to $5,000.

c. **Newly Acquired or Constructed Property**

(1) The limit for your new buildings or additions while being built on the described premises or newly acquired premises is increased from $250,000 to $500,000.

(2) The limit for newly acquired Business Personal Property is increased from $250,000 to $500,000.

d. **Outdoor Property**

The limit of $5,000 at each described premises is increased to $10,000.

e. **Valuable Papers and Records – Cost of Research** is deleted and is replaced with the following:

**Valuable Papers and Records (Other Than Accounts Receivable) – Cost of Research**

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, (other than accounts receivables), including those which exist on electronic or magnetic media, for which duplicates do not exist.

The most we will pay under this Coverage Extension is $25,000 at each described premises or within 1,000 feet thereof and $5,000 while in transit or temporarily at your home or at a premise you do not own, lease or operate.

This amount is in addition to the Limits of Insurance.

6. The following **Coverage Extensions** are added:

a. **Accounts Receivable**

You may extend the insurance that applies to Business Personal Property to apply to loss or damage by a Covered Cause of Loss to your accounts receiv-

able records including those on electronic data processing media.

(1) We will pay:

(a) Amounts due from your customers that you are unable to collect because of loss or damage to your accounts receivable records;

(b) Interest charges on any loan required to offset amounts you are unable to collect because of loss or damage to your accounts receivable records, pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) We will not pay for loss or damage under this Coverage Extension caused by or resulting from any of the following:

(a) Bookkeeping, accounting or billing errors or omissions; or

(b) Electrical or magnetic injury, disturbance or erasure of electronic recording except as a result of a direct loss caused by lightning.

(3) We will not pay for loss or damage that requires:

(a) an audit of records;

(b) any inventory computation; or

(c) a profit or loss computation;

to prove its factual existence.

The most we will pay under this Coverage Extension in any one occurrence is $25,000 at each described premises or within 1,000 feet of the described premises and $10,000 while in transit or temporarily at your home or at a premises you do not own, lease or operate.

This amount is in addition to the Limits of Insurance.

b. **Business Computer**

(1) You may extend the insurance that applies under **A.1.b., Business Personal Property**, to loss or damage by a Covered Cause of Loss to the

following types of property used in your data processing operations at a location described in the Declarations:

**(a)** Equipment. Your electronic data processing equipment, facsimile machines, word processors, multi-functional telephone systems, laptop and portable computers; related surge protection devices; and their component parts and peripherals.

**(b)** Data and Media. Your data stored on disks, films, tapes or similar electronic data processing media; the media itself; computer programs and instructions; and similar property of others in your care, custody or control.

**(c)** Duplicate Data and Media. We will pay for loss to duplicates of covered Data and Media while stored in a separate building at least 1,000 feet from a location described in the Declarations.

**(2)** We will pay for accidental loss or damage to the equipment covered by this form while at a location shown in the Declarations if the accidental loss or damage is caused by a Covered Cause of Loss, including any of the following:

**(a)** Mechanical breakdown of covered equipment while at a location described in the Declarations. But we will not pay for loss to such equipment if caused by or resulting from any change in electrical power or other utility service, such as failure, fluctuation or interruption, if that change originates more that 1,000 feet from the building containing the equipment.

**(b)** Corrosion, rust, dampness, dryness, cold, heat or humidity resulting directly from damage to the air conditioning or heating system that services your data processing equipment. The damage to such systems must be caused by a Covered Cause of Loss.

The most we will pay under this Coverage Extension is $10,000. This amount is in addition to the Limits of Insurance.

**c.** **Fine Arts**

You may extend the insurance that applies to Business Personal Property to apply to loss or damage by a Covered Cause of Loss to "Fine Arts" at the premises described in the Declarations. The most we will pay under this Extension is $10,000 in any one occurrence. The Breakage Limitation contained in Section **A.5.c.(2)** of the Businessowners Property Coverage Special Form does not apply to this Fine Arts Extension.

"Fine Arts" means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac and similar property of rarity, historical value, or artistic merit.

The following is added to **PROPERTY LOSS CONDITIONS – E.4.e.(4)(d)** with respect to "Fine Arts":

We will determine the value of Fine Arts as follows:

Works of art, antiques or rare articles at the lesser of:

**(1)** Market value at the time and place of loss;

**(2)** Cost of reasonably restoring that property; or

**(3)** Replacing that property with substantially the same property.

This amount is in addition to the Limits of Insurance.

# GENERAL LIABILITY

# GENERAL LIABILITY

**TABLE OF CONTENTS**

# COMMERCIAL GENERAL LIABILITY
## COVERAGE FORM
## CG 00 01 10 01

SECTION I—COVERAGES

Beginning on Page

Coverage A -
Bodily Injury and Property        Insuring Agreement ...............................................................1
Damage Liability

Exclusions ...............................................................................2

Coverage B -
Personal and Advertising          Insuring Agreement ...............................................................5
Injury Liability

Exclusions ...............................................................................5

Coverage C -
Medical Payments                  Insuring Agreement ...............................................................7

Exclusions ...............................................................................7

Supplementary Payments .......................................................................... 7

SECTION II—WHO IS AN INSURED .......................................................................8

SECTION III—LIMITS OF INSURANCE ................................................................10

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS .........................................10

Bankruptcy ...........................................................................................10
Duties in the Event of Occurrence, Claim or Suit ...............................................10
Legal Action Against Us ...........................................................................11
Other Insurance ...................................................................................11
Premium Audit ......................................................................................12
Representations ....................................................................................12
Separation of Insureds ...........................................................................12
Transfer of Rights of Recovery Against Others To Us .........................................12
When We Do Not Renew ..............................................................................12

SECTION V—DEFINITIONS ...............................................................................12

CG T0 34 11 03

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    © ISO Properties Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be liable, if you are a contractor and the owner or lessee of such

              © ISO Properties Inc., 2000              **CG 00 01 10 01**

premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the

"bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

    © ISO Properties Inc., 2000    **CG 00 01 10 01**

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods — Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding

to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

   **(1)** The accident takes place in the "coverage territory" and during the policy period;

   **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

   **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

   To any insured, except "volunteer workers".

**b. Hired Person**

   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

   To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

   To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

   Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

   Excluded under Coverage **A**.

**h. War**

   Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment

    © ISO Properties Inc., 2000

interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

    © ISO Properties Inc., 2000    CG 00 01 10 01

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

                    © ISO Properties Inc., 2000

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person

or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contrib-

ute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communica

© ISO Properties Inc., 2000
CG 00 01 10 01

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property

damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical

device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended

    © ISO Properties Inc., 2000    CG 00 01 10 01

use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured

must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

© ISO Properties Inc., 2000

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, qual-

ity, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

    © ISO Properties Inc., 2000    **CG 00 01 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION –
# REAL ESTATE DEVELOPMENT ACTIVITIES –
# COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**A.** This insurance does not apply to "bodily injury" or "property damage" that is included in the "products-completed operations hazard" and that arises out of any "real estate development activities" by or on behalf of any insured.

**B.** Paragraph **16. b. (3) of SECTION V – DEFINITIONS** does not apply to any "real estate development activities" by or on behalf of any insured.

**C.** The following definition is added to **SECTION V – DEFINITIONS**:

"Real estate development activities" means the design, site preparation, construction, marketing or sales of residential, commercial or industrial buildings.

**D.** The Provisions of this endorsement do not apply to the repair, maintenance, renovation, alteration or addition to an existing building owned by the Named Insured.



EXHIBIT
1-C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

Paragraph **f.(2) Pollution**, Part **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following:

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

The definition of "products-completed operations hazard" **Section V – Definitions** is amended by deleting item **16.b. (3)** and replacing it with:

**(3)** Products or operations for which the classification, listed in the Declarations, in a policy schedule or in our manual of rules, states that the products-completed operations are subject to the General Aggregate Limit.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: I-680-5076B416-TCT-04                          ISSUE DATE: 11-16-04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**NAME OF PERSON OR ORGANIZATION:**

FREMONT INVESTMENT & LOAN
ATTN; NICK NAWAZ


2727 EAST IMPERIAL HIGHWAY

BREA                        CA  92821



**DESIGNATION OF PREMISES:**

1700 KALORAMA RD
WASHINGTON                  DC  20009




(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, successor or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2.  This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: I-680-5076B416-TCT-04

ISSUE DATE: 11-16-04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**NAME OF PERSON OR ORGANIZATION:**

BRESLER  FAMILY INVESTORS
ATTN; SIDNEY BRESLER


11140 ROCKVILLE PIKE SUITE 620

ROCKVILLE           MD   20852


**DESIGNATION OF PREMISES:**

1700 KALORAMA RD
WASHINGTON          DC   20009


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, successor or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OTHER INSURANCE – ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

Paragraph **4.b.** of CONDITIONS (Section IV) is amended as follows:

**b. Excess Insurance**

This insurance is excess over any of the other insurance; whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

**(2)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(3)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(4)** If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion **g.** of Section I– Coverage A – Bodily Injury And Property Damage Liability; or

**(5)** That is valid and collectible insurance available to you if you are added as an additional insured under any other policy.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# XTEND ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. The following listing is a general coverage description only. Limitations and exclusions may apply to these coverages. Read all the **PROVISIONS** of this endorsement carefully to determine rights, duties, and what is and is not covered.

**A.** Broadened Named Insured

**B.** Damage To Premises Rented To You Extension
  - Perils of fire, explosion, lightning, smoke, water
  - Limit increased to $300,000

**C.** Blanket Waiver of Subrogation

**D.** Blanket Additional Insured – Managers or Lessors of Premises

**E.** Blanket Additional Insured – Lessor of Leased Equipment

**F.** Incidental Medical Malpractice

**G.** Personal Injury – Assumed by Contract

**H.** Extension of Coverage – Bodily Injury

**I.** Injury to Co-Employees and Co-Volunteer Workers

**J.** Aircraft Chartered with Crew

**K.** Non-Owned Watercraft – Increased from 25 feet to 50 feet

**L.** Increased Supplementary Payments
  - Cost for bail bonds increased to $2,500
  - Loss of earnings increased to $500 per day

**M.** Knowledge and Notice of Occurrence or Offense

**N.** Unintentional Omission

**O.** Reasonable Force – Bodily Injury or Property Damage

## PROVISIONS

### A. BROADENED NAMED INSURED

1. The Named Insured in Item **1.** of the Declarations is as follows:

   The person or organization named in Item **1.** of the Declarations and any organization, other than a partnership or joint venture, over which you maintain ownership or majority interest on the effective date of the policy. However, coverage for any such organization will cease as of the date during the policy period that you no longer maintain ownership of, or majority interest in, such organization.

2. WHO IS AN INSURED (Section **II**) Item **4.a.** is deleted and replaced by the following:

   a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, unless reported in writing to us within 180 days.

3. This Provision **A.** does not apply to any person or organization for which coverage is excluded by endorsement.

### B. DAMAGE TO PREMISES RENTED TO YOU EXTENSION

1. The last paragraph of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

   Exclusions **c.** through **n.** do not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

   a. Fire;

   b. Explosion;

   c. Lightning;

   d. Smoke resulting from such fire, explosion, or lightning; or

   e. Water.

   A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section **III**).

2. This insurance does not apply to damage to premises while rented to you, or temporarily

occupied by you with permission of the owner, caused by:

   **a.** Rupture, bursting, or operation of pressure relief devices;

   **b.** Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water;

   **c.** Explosion of steam boilers, steam pipes, steam engines, or steam turbines.

**3.** Part **6.** of LIMITS OF INSURANCE (Section III) is deleted and replaced by the following:

Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under COVERAGE A. for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner, caused by fire, explosion, lightning, smoke resulting from such fire, explosion, or lightning, or water. The Damage To Premises Rented To You Limit will apply to all damage proximately caused by the same "occurrence", whether such damage results from fire, explosion, lightning, smoke resulting from such fire, explosion, or lightning, or water, or any combination of any of these.

The Damage To Premises Rented To You Limit will be the higher of:

   **a.** $300,000; or

   **b.** The amount shown on the Declarations for Damage To Premises Rented To You Limit.

**4.** Under DEFINITIONS (Section V), Paragraph **a.** of the definition of "insured contract" is amended so that it does not include that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

   **a.** Fire;

   **b.** Explosion;

   **c.** Lightning;

   **d.** Smoke resulting from such fire, explosion, or lightning; or

   **e.** Water.

**5.** This Provision **B.** does not apply if coverage for Damage To Premises Rented To You of

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is excluded by endorsement.

**C. BLANKET WAIVER OF SUBROGATION**

We waive any right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of premises owned or occupied by or rented or loaned to you; ongoing operations performed by you or on your behalf, done under a contract with that person or organization; "your work"; or "your products". We waive this right where you have agreed to do so as part of a written contract, executed by you prior to loss.

**D. BLANKET ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES**

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as "additional insured") with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you, subject to the following provisions:

**1.** Limits of Insurance. The limits of insurance afforded to the additional insured shall be the limits which you agreed to provide, or the limits shown on the Declarations, whichever is less.

**2.** The insurance afforded to the additional insured does not apply to:

   **a.** Any "occurrence" that takes place after you cease to be a tenant in that premises;

   **b.** Any premises for which coverage is excluded by endorsement; or

   **c.** Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**3.** The insurance afforded to the additional insured is excess over any valid and collectible insurance available to such additional insured, unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis.

**E. BLANKET ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT**

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as "additional insured") with

   Copyright, The Travelers Indemnity Company, 2003   **CG D1 86 11 03**

whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such additional insured, subject to the following provisions:

1. Limits of Insurance. The limits of insurance afforded to the additional insured shall be the limits which you agreed to provide, or the limits shown on the Declarations, whichever is less.

2. The insurance afforded to the additional insured does not apply to:

   a. Any "occurrence" that takes place after the equipment lease expires; or

   b. "Bodily injury" or "property damage" arising out of the sole negligence of such additional insured.

3. The insurance afforded to the additional insured is excess over any valid and collectible insurance available to such additional insured, unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis.

**F. INCIDENTAL MEDICAL MALPRACTICE**

1. The definition of "bodily injury" in DEFINITIONS (Section **V**) is amended to include "Incidental Medical Malpractice Injury".

2. The following definition is added to DEFINITIONS (Section **V**):

   "Incidental medical malpractice injury" means bodily injury, mental anguish, sickness or disease sustained by a person, including death resulting from any of these at any time, arising out of the rendering of, or failure to render, the following services:

   a. Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;

   b. The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

   c. First aid.

   d. "Good Samaritan services". As used in this Provision **F.**, "Good Samaritan services" are those medical services rendered or provided in an emergency and for which no remuneration is demanded or received.

3. Paragraph **2.a.(1)(d)** of WHO IS AN INSURED (Section **II**) does not apply to any registered nurse, licensed practical nurse, emergency medical technician or paramedic employed by you, but only while performing the services described in paragraph **2.** above and while acting within the scope of their employment by you. Any "employees" rendering "Good Samaritan services" will be deemed to be acting within the scope of their employment by you.

4. The following exclusion is added to paragraph **2.** Exclusions of COVERAGE A. – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

   (This insurance does not apply to:) Liability arising out of the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of the insured.

5. For the purposes of determining the applicable limits of insurance, any act or omission, together with all related acts or omissions in the furnishing of the services described in paragraph **2.** above to any one person, will be considered one "occurrence".

6. This Provision **F.** does not apply if you are in the business or occupation of providing any of the services described in paragraph **2.** above.

7. The insurance provided by this Provision **F.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**G. PERSONAL INJURY – ASSUMED BY CONTRACT**

1. The **Contractual Liability** Exclusion in Part **2., Exclusions** of COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

   (This insurance does not apply to:)

   **Contractual Liability**

   "Advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for

damages that the insured would have in the absence of the contract of agreement.

2. Subparagraph **f.** of the definition of "insured contract" (DEFINITIONS – Section **V**) is deleted and replaced by the following:

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury," "property damage" or "personal injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

3. This Provision **G.** does not apply if COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY is excluded by endorsement.

## H. EXTENSION OF COVERAGE – BODILY INJURY

The definition of "bodily injury" (DEFINITIONS – Section **V**) is deleted and replaced by the following:

"Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

## I. INJURY TO CO-EMPLOYEES AND CO-VOLUNTEER WORKERS .

1. Your "employees" are insureds with respect to "bodily injury" to a co-"employee" in the course of the co-"employee's" employment by you, or to your "volunteer workers" while performing duties related to the conduct of your business, provided that this coverage for your "employees" does not apply to acts outside the scope of their employment by you or while performing duties unrelated to the conduct of your business.

2. Your "volunteer workers" are insureds with respect to "bodily injury" to a co-"volunteer worker" while performing duties related to the conduct of your business, or to your "employees" in the course of the "employee's" employment by you, provided that this coverage for your "volunteer workers" does not apply while performing duties unrelated to the conduct of your business.

3. Subparagraphs **2.a.(1)(a)**, **(b)** and **(c)** and **3.a.** of WHO IS AN INSURED (Section **II**) do not apply to "bodily injury" for which insurance is provided by paragraph **1.** or **2.** above.

## J. AIRCRAFT CHARTERED WITH CREW

1. The following is added to the exceptions contained in the **Aircraft, Auto Or Watercraft** Exclusion in Part **2.**, **Exclusions** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

    (This exclusion does not apply to:) Aircraft chartered with crew to any insured.

2. This Provision **J.** does not apply if the chartered aircraft is owned by any insured.

3. The insurance provided by this Provision **J.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

## K. NON-OWNED WATERCRAFT

1. The exception contained in Subparagraph **(2)** of the **Aircraft, Auto Or Watercraft** Exclusion in Part **2.**, **Exclusions** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

    **(2)** A watercraft you do not own that is:

        **(a)** Fifty feet long or less; and

        **(b)** Not being used to carry persons or property for a charge;

2. This Provision **K.** applies to any person who, with your expressed or implied consent, either uses or is responsible for the use of a watercraft.

3. The insurance provided by this Provision **K.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

## L. INCREASED SUPPLEMENTARY PAYMENTS

Parts **b.** and **d.** of SUPPLEMENTARY PAYMENTS – COVERAGES A AND B (Section **I** – Coverages) are amended as follows:

1. In Part **b.** the amount we will pay for the cost of bail bonds is increased to $2500.

    Copyright, The Travelers Indemnity Company, 2003    **CG D1 86 11 03**

2. In Part **d.** the amount we will pay for loss of earnings is increased to $500 a day.

## M. KNOWLEDGE AND NOTICE OF OCCURRENCE OR OFFENSE

1. The following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**), paragraph **2.** (Duties In The Event of Occurrence, Offense, Claim or Suit):

   Notice of an "occurrence" or of an offense which may result in a claim under this insurance shall be given as soon as practicable after knowledge of the "occurrence" or offense has been reported to any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice.

   Knowledge by other "employee(s)" of an "occurrence" or of an offense does not imply that you also have such knowledge.

2. Notice shall be deemed prompt if given in good faith as soon as practicable to your workers' compensation insurer. This applies only if you subsequently give notice to us as soon as practicable after any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice discovers that the "occurrence", offense or claim may involve this policy.

3. However, this Provision **M.** does not apply as respects the specific number of days within which you are required to notify us in writing of the abrupt commencement of a discharge, release or escape of "pollutants" which causes "bodily injury" or "property damage" which may otherwise be covered under this policy.

## N. UNINTENTIONAL OMISSION

The following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**), paragraph **6.** (Representations):

The unintentional omission of, or unintentional error in, any information provided by you shall not prejudice your rights under this insurance. However, this Provision **N.** does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal in accordance with applicable state insurance laws, codes or regulations.

## O. REASONABLE FORCE – BODILY INJURY OR PROPERTY DAMAGE

The **Expected Or Intended Injury** Exclusion in Part **2., Exclusions** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is deleted and replaced by the following:

(This insurance does not apply to:)

**Expected or Intended Injury or Damage**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Paragraph 5 of SECTION III – LIMITS OF INSUR-ANCE, is amended to include the following:

   Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

2. Paragraph 4 of SECTION III – LIMITS OF INSUR-ANCE, is amended to include the following:

   Non cumulation of Personal and Advertising Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WEB XTEND LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

Paragraph **o. Personal And Advertising injury**, Part **2. Exclusions** of SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

**o. Personal Injury, Advertising Injury and Web Site Injury**

"Bodily injury" arising out of "personal injury", "advertising injury" or "web site injury".

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I – COVERAGES)** is deleted in its entirety and replaced by the following:

**COVERAGE B. PERSONAL INJURY, AD-VERTISING INJURY AND WEB SITE INJURY LIABILITY**

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured be-comes legally obligated to pay as damages because of "personal injury", "advertising in-jury" or "web site injury" to which this insur-ance applies. We will have the right and duty to defend the insured against any "suit" seek-ing those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury", "ad-vertising injury", or "web site injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or of-fense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explic-itly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; or

**(3)** "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site";

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of An-other**

"Personal injury", "advertising injury" or "web site injury" caused by or at the di-rection of the insured with the knowledge that the act would violate the rights of an-other and would inflict "personal injury", "advertising injury" or "web site injury".

**b. Material Published With Knowledge Of Falsity**

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Pe-riod**

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

    Copyright, The Travelers Indemnity Company, 2003

**d. Criminal Acts**

"Personal injury", "advertising injury" or "web site injury" arising out of a criminal act committed by or with the consent of the insured.

**e. Contractual Liability**

"Personal injury", "advertising injury" or "web site injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

**(1)** "Personal injury" liability assumed in a contract or agreement that is an "insured contract", provided the "personal injury" arises out of an offense committed subsequent to the execution of the contract or agreement; or

**(2)** "Personal injury", "advertising injury" or "web site injury" that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Advertising injury" or "web site injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Advertising injury" or "web site injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the course of advertising your goods, products or services.

**h. Wrong Description Of Prices**

"Advertising injury" or "web site injury" arising out of the wrong description of the price of goods, products or services.

**i. Insureds In Media And Internet Type Businesses**

"Personal injury", "advertising injury" or "web site injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **a.**, **b.** and **c.** of the "personal injury" definition under **SECTION V – DEFINITIONS** of this endorsement.

**j. Electronic Chatrooms Or Bulletin Boards**

"Personal injury", "advertising injury" or "web site injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**k. Unauthorized Use Of Another's Name Or Product**

"Personal injury", "advertising injury" or "web site injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar activities that mislead another's potential customers.

**l. Pollution**

"Personal injury", "advertising injury" or "web site injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**m. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**n. Dishonest, Fraudulent Or Malicious Acts**

"Web site injury" arising out of dishonest, fraudulent, criminal or malicious acts, errors or omissions committed by any insured, or by anyone for whom the insured is legally responsible, whether acting alone or with others.

**o. Web Site Intellectual Property**

"Web site injury" committed by any insured whose business is providing ac-

cess to intellectual property of others via "your web site".

**p. Employment-Related Practices**

"Web site injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **p.(1)(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(i)** whether the insured may be held liable as an employer or in any other capacity; and

**(ii)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## SECTION II – WHO IS AN INSURED

The introductory sentence of paragraph **2. a. (1)** Section **II** – Who Is An Insured is deleted and replaced by the following:

**2. a. (1)** "Bodily injury", "personal injury" or "web site injury":

Section II – Who Is An Insured, paragraph **4. c.**, is deleted and replaced by the following:

**4. c.** Coverage B does not apply to "personal injury", "advertising injury" or "web site injury" arising out of an offense committed before you acquired or formed the organization.

## SECTION III – LIMITS OF INSURANCE

**SECTION III – Limits Of Insurance, paragraph 4,** is deleted and replaced by the following:

**4.** Subject to **2.** above, the Personal, Advertising and Web Site Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal injury", "advertising injury"

and all "web site injury" sustained by any one person or organization.

## SECTION V – DEFINITIONS

### ADVERTISEMENT

The definition of **"Advertisement" (SECTION V – DEFINITIONS)** is deleted in its entirety.

### ADVERTISING INJURY

The definition of **"Advertising injury" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following:

**1.** "Advertising injury" means injury, arising out of one or more of the following offenses:

**a.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

**c.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

### COVERAGE TERRITORY

The definition of **"Coverage Territory" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business; or

**(3)** "Personal injury", "advertising injury", and "web site injury" offenses that take place

COMMERCIAL GENERAL LIABILITY

through the Internet or similar electronic means of communication; and

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

## INSURED CONTRACT

The first paragraph of part **f.** of the definition of **"Insured Contract" (SECTION V – DEFINITIONS)** is deleted and replaced by the following:

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

## PERSONAL INJURY

The definition of **"Personal injury" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following:

"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or

**e.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life.

## SUIT

The definition of **"Suit" (SECTION V – DEFINITIONS)** is deleted in its entirety and replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", "advertising injury" or "web site injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

The following definitions are added to **SECTION V – DEFINITIONS:**

## WEB SITE INJURY

"Web site injury" means injury, other than "personal injury" or "advertising injury", arising out of one or more of the following offenses:

**a.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life;

**c.** Oral, written or electronic publication of material that violates a person's right of publicity, provided that claim is made or "suit" is brought by the person claiming rights of publicity; or

**d.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

## YOUR WEB SITE

"Your web site" means all computer files and data which may be accessed via the Internet using a Universal Resource Locator that includes any domain name owned by or assigned to you.

    Copyright, The Travelers Indemnity Company, 2003    **CG D2 34 11 03**

COMMERCIAL GENERAL LIABILITY
POLICY NUMBER: I-680-5076B416-TCT-04    ISSUE DATE: 11-16-04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NONOWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| COVERAGE | ADDITIONAL PREMIUM |
|---|---|
| Hired Auto Liability | $ INCLUDED |
| Nonowned Auto Liability | $ INCLUDED |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## PROVISIONS

### A. COVERAGE

If a premium charge is shown in the SCHEDULE above, the insurance provided under **Section I – Coverage A – Bodily Injury And Property Damage Liability** applies to "bodily injury" and "property damage" arising out of the maintenance or use of a "hired auto" or "nonowned auto". Maintenance or use of a "nonowned auto" includes test driving in connection with an "auto business".

### B. EXCLUSIONS

With respect to the insurance provided by this endorsement:

1. The exclusions, under **Section I – Coverage A – Bodily Injury And Property Damage Liability**, other than exclusions **a., b., d., e., f.** and **i.** and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

   a. "Bodily injury" to:

      (1) Any fellow "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business.

   b. "Property damage" to:

      (1) Property owned or being transported by, or rented or loaned to the insured; or

      (2) Property in the care, custody or control of the insured.

### C. WHO IS AN INSURED

**Section II – Who Is An Insured** is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

1. You;

2. Anyone else including any partner or "executive officer" of yours while using with your permission a "hired auto" or a "nonowned auto" except:

   a. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner or lessee of a "nonowned auto" or any agent or "employee" of any such owner or lessee;

   b. Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household;

   c. Your "employee" if the covered "auto" is leased, hired or rented by him or her or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

   d. Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

   e. Any partner or "executive officer" with respect to any "auto" leased or rented to such partner or officer or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **f.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

    **g.** Anyone other than your "employees", partners, a lessee or borrower or any of their "employees", while moving property to or from a "hired auto" or a "nonowned auto"; or

  **3.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under **1.** or **2.** above.

## D. AMENDED DEFINITIONS

The Definition of "insured contract" of **Section V – Definitions** is amended by the addition of the following exceptions to paragraph **f.**:

Paragraph **f.** does not include that part of any contract or agreement:

**(4)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(5)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

## E. ADDITIONAL DEFINITIONS

**Section V – Definitions** is amended by the addition of the following definitions:

**1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include:

    **a.** Any "auto" you lease, hire or rent under a lease or rental agreement for a period of 180 days or more, or

    **b.** Any "auto" you lease, hire, rent or borrow from any of your "employees", partners, stockholders, or members of their households.

**3.** "Nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business at the time of an "occurrence". This includes "autos" owned by your "employees" or partners or members of their households but only while being used in the course and scope of your business at the time of an "occurrence".

If you are a sole proprietor, "nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business or personal affairs at the time of an "occurrence".

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**MP T1 25 11 03**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions **of Section I – Coverage A – Bodily Injury And Property Damage**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal injury" or "advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

**PROVISIONS**

The definition of "property damage" in **SECTION V – DEFINITIONS** is deleted in its entirety and replaced by the following:

"Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records".

As used in this definition, "electronic media and records" means:

**a.** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**b.** Data stored on such media; or

**c.** Programming records for electronic data processing or electronically controlled equipment.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNSOLICITED COMMUNICATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "website injury" arising out of unsolicited communications by or on behalf of any insured. Unsolicited communications means any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection Act and any amendments, and/or local or state statutes that bar, prohibit or penalize such communications.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — LEAD

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> CATASTROPHE UMBRELLA POLICY

**PROVISIONS**

This insurance does not apply to any injury, damage, loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

1. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

2. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such injury or damage, loss, cost, payment or expense; or

3. Any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

CG D0 76 06 93

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** – is amended by adding the following additional exclusion:

(This Insurance does not apply to:)

"Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

**2. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** – is amended by adding the following additional exclusion:

(This insurance does not apply to:)

"Personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – WAR

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions:**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions:**

This insurance does not apply to:

**War**

"Personal injury" or "advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    CATASTROPHE UMBRELLA POLICY

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

 Copyright, The Travelers Indemnity Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION WHEN TWO OR MORE POLICIES APPLY

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYEE BENEFITS LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**Provisions**

1.  Injury, damage or loss might be covered by this policy and also by other policies issued to you by us or any Travelers affiliate. When these other policies contain a provision similar to this one, the amount we will pay is limited.  The maximum that we will pay under all such policies combined is the highest limit that applies in any one of these policies.

2.  This does not apply to any personal liability policy or to any Umbrella, Excess or Protective Liability Policy.

   Copyright, The Travelers Indemnity Company, 2003

**BOILER AND MACHINERY**

# BOILER AND MACHINERY

**ST PAUL TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

| | |
|---|---|
| **MASTER PAC** | **POLICY NO.:** I-680-5076B416-TCT-04 |
| **ENERGY EQUIPMENT SPECIAL COVERAGE FORM** | **ISSUE DATE:** 11-16-04 |
| **COVERAGE FORM DECLARATIONS** | |

**INSURING COMPANY:**

THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

EFFECTIVE DATE: FROM 11-12-04    to    11-12-05    12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

COVERAGES, LIMITS OF INSURANCE AND OPTIONS—Insurance applies only to a coverage for which a limit, "Unlimited" or "Included" is shown.  An "X" indicates an applicable coverage option.

The Energy Equipment Special Coverage Part consists of these Declarations, the Coverage Forms, Schedules and Endorsements shown below.

1. THESE DECLARATIONS APPLY TO ALL LOCATIONS COVERED BY THIS POLICY UNLESS OTHERWISE ENDORSED.

2. **DEFINITION OF "OBJECT":**

   **INCLUDES BOILERS:**

   **EXCLUDES BOILERS:**  X

3. **COVERAGES AND LIMITS:**

| COVERAGES | LIMITS |
|---|---|
| Direct Damage: | **Unlimited** |
| Expediting Expenses: | **Unlimited** |
| Business Income and Extra Expense: | **12 Months** |
| Ammonia Contamination: | **Unlimited** |
| Water Damage: | **Unlimited** |
| Increased Cost of Construction or Repair: | **$25,000** |
| Hazardous Substances: | **$25,000** |
| Off Premises Service Interruption: | **$10,000** |
| | |
| Newly Acquired Locations: | **Included** |
| Error in Description: | **Included** |

(Newly Acquired Locations and Error in Description coverages are also subject to all other applicable limits.)

4. **DEDUCTIBLES**

   Combined Deductible for All Applicable Coverages:    $    500

5. **NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART:**

   SEE FORMS, SCHEDULES AND ENDORSEMENTS ON COMMON POLICY DECLARATIONS.

**TABLE OF CONTENTS**

# BOILER AND MACHINERY COVERAGE PART
# ENERGY EQUIPMENT SPECIAL COVERAGE FORM

Declarations and Endorsements that may also be attached to your policy are not included in this Table of Contents.

ITEM                                                          Page No. Where Item Begins

COVERAGES
    Direct Damage to Covered Property ................................................ 1
    Covered Cause of Loss ...................................................................... 1
    Defense and Supplementary Payments ......................................... 1
    Expediting Expenses ......................................................................... 1
    Business Income and Extra Expense ............................................. 2
    Off Premises Service Interruption .................................................. 2
    Ammonia Contamination ................................................................... 2
    Water Damage .................................................................................... 2
    Hazardous Substances ..................................................................... 2
    Increased Cost of Construction or Repair ..................................... 2
    Newly Acquired Locations ................................................................ 3
    Error in Description ........................................................................... 3

EXCLUSIONS
    Ordinance or Law .............................................................................. 3
    Nuclear Hazard .................................................................................. 3
    War and Military Action .................................................................... 3
    Other Exclusions ............................................................................... 3

LIMITS OF INSURANCE
    Direct Damage Limit ......................................................................... 4
    Business Income and Extra Expense Limit ................................... 4
    Other Coverage Extension Limits ................................................... 4

DEDUCTIBLE ............................................................................................. 4

LOSS CONDITIONS
    Abandonment ..................................................................................... 4
    Appraisal ............................................................................................. 5
    Duties in the Event of Loss or Damage ......................................... 5
    Reducing Your Loss .......................................................................... 5
    Loss Payment .................................................................................... 5
    Valuation ............................................................................................. 6
    "Media" Valuation .............................................................................. 6

ADDITIONAL CONDITIONS
    Concealment, Misrepresentation or Fraud ................................... 6
    Legal Action Against Us ................................................................... 6
    Liberalization ..................................................................................... 7
    Other Insurance ................................................................................ 7
    Policy Period, Coverage Territory .................................................. 7
    Transfer of Rights of Recovery ...................................................... 7
    Additional Insured ............................................................................ 7
    Bankruptcy ......................................................................................... 7
    Suspension ......................................................................................... 7
    Mortgage Holders ............................................................................. 7

DEFINITIONS .............................................................................................. 8

BM T1 42 09 92

# ENERGY EQUIPMENT SPECIAL COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Common Declarations. The words "we," "us" and "our" refer to the Company identified on the Common Declarations which is providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section G—DEFINITIONS.

## A. COVERAGE

We will pay for direct damage to Covered Property caused by a Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means any property that:

a. You own; or

b. Is in your care, custody or control and for which you are liable

while at a location described in the Declarations.

### 2. Covered Cause of Loss

A Covered Cause of Loss is an "accident" to an "object."

### 3. Defense and Supplementary Payments

a. If there is damage to property of another in your care, custody or control that was directly caused by an "accident" to an "object," we will have the right and duty to defend any "suit" alleging liability for damage to that property. However, we have no duty to defend you against a "suit" seeking damages for a loss to which this insurance does not apply.

b. If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control, that was directly caused by an "accident" to an "object," we will either:

(1) Settle the claim or "suit," or

(2) Defend you against the claim or "suit" but keep for ourselves the right to settle it at any point.

c. We will pay, with respect to any claim or any "suit" we defend:

(1) All expenses we incur;

(2) The cost of bonds to release attachments. We do not have to furnish these bonds;

(3) All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work;

(4) All costs taxed against you in any "suit" we defend;

(5) Pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable limits (or, if coverage is Unlimited, the total loss resulting from the "accident") we will not pay any pre-judgment interest based on that period of time after the offer; and

(6) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limits (or, if coverage is Unlimited, the total amount of insured loss resulting from the "accident").

### 3. Coverage Extensions

You may extend the insurance provided by this Coverage Part as follows:

### a. Expediting Expenses

With respect to damaged Covered Property, we will pay the reasonable extra cost to:

(1) Make temporary repairs;

(2) Expedite permanent repairs; and

(3) Expedite permanent replacement.

b. **Business Income and Extra Expense Coverage**

(1) We will pay:

(a) Your actual loss of "business income" from a total or partial interruption of business; and

(b) The reasonable "extra expense" to run your business during the interruption;

caused solely by an "accident" to an "object" as described below.

(2) The "object" must either be Covered Property or be:

(a) Located on or within 500 feet of a location insured under this Coverage Part; and

(b) Used to supply electrical power, communications services, air conditioning, heating, gas, water or steam to the described premises.

(3) The "accident" must occur during the Policy Period, but expiration of the policy does not limit our liability under this coverage.

c. **Off Premises Services Interruption**

(1) We will pay:

(a) Your actual loss of "business income" from a total or partial interruption of business; and

(b) The reasonable "extra expense" to run your business during the interruption;

caused solely by an "accident" to an "object" as described below.

(2) The "object" must be:

(a) Located more than 500 feet from a location insured under this Coverage Part; and

(b) Used to supply electrical power, communications services, air conditioning, heating, gas, water or steam to the described premises.

(3) The "accident" must occur during the Policy Period, but expiration of the policy does not limit our liability under this coverage.

d. **Ammonia Contamination Coverage**

We will pay for damage to Covered Property contaminated by ammonia as a result of an "accident" to an "object."

e. **Water Damage Coverage**

We will pay for damage to Covered Property by water as a result of an "accident" to an air conditioning system.

f. **Hazardous Substances Coverage**

We will pay for damage to Covered Property contaminated by a Hazardous Substance as a result of an "accident" to an "object."

We will also pay:

(1) Your actual loss of "business income" from a total or partial interruption of business; and

(2) The reasonable "extra expense" to run your business during the interruption;

caused solely by such contamination.

As used above, Hazardous Substance shall mean any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

g. **Increased Cost of Construction or Repair**

The following applies as an exception to the operation of the Ordinance or Law Exclusion.

If a Covered Cause of Loss occurs to Covered Property insured under this Coverage Part, we will pay the increased cost to repair, rebuild or construct the damaged property caused by enforcement of a building, zoning or land use ordinance or law. The repaired or rebuilt property must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

This extension of coverage does not apply to any increase in loss due to a substance declared to be hazardous to health by a governmental agency.

We will not pay for increased construction costs until the property is actually repaired or replaced.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, Office, Inc., 1983, 1990
**BM T1 41 04 92**

h. **Newly Acquired Locations**

You may extend the insurance provided by this Coverage Part to a newly acquired location that you have purchased or leased. This automatic coverage begins at the time you acquire the property and is subject to the following conditions:

(1) You agree to pay an additional premium as determined by us. Such additional premium will be computed from the date of acquisition.

(2) Insurance under this Coverage Extension for each newly acquired location will end when any of the following first occurs:

(a) This Policy expires;

(b) 30 days expire after you acquire the location;

(c) You report the location to us; or

(d) The location is more specifically insured.

(3) Insurance under this Coverage Part for such locations will be subject to the same conditions, exclusions and limitations as other insured locations, except as follows:

(a) If deductibles vary by location, the highest deductibles will apply; and

(b) If Boilers are excluded as "objects," such exclusion will not apply.

i. **Error in Description**

We will pay your loss covered by this Coverage Part if such loss is not payable solely because of any unintentional error or omission in the description of a location as insured under this Coverage Part.

## B. EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. **Ordinance or Law**

Except as provided under the Coverage Extensions Increased Cost of Construction or Repair and Hazardous Substances, any increase in loss caused by or resulting from enforcement of any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation.

2. **Nuclear Hazard**

Loss caused by or resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

3. **War and Military Action**

Loss caused by or resulting from:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

4. **Other Exclusions**

Loss caused by or resulting from:

a. Fire or combustion explosion that occurs at the same time as an "accident" or that ensues from an "accident." With respect to any electrical equipment forming a part of an "object," this exclusion is changed to read:

Fire or explosion outside the "object" that occurs at the same time as an "accident" or ensues from an "accident."

b. Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the gas passages from that furnace to the atmosphere;

c. An "accident" that is the direct or indirect result of a combustion explosion or fire;

d. Water or other means used to extinguish a fire, even when such an attempt is unsuccessful;

e. Flood. However:

(1) If an "accident" results from a flood, we will pay for loss, damage or expense caused by the "accident"; and

**(2)** If electrical "objects" require drying out as a result of flood, the drying out will be considered an "accident";

**f.** An "accident" caused directly or indirectly by earth movement, including but not limited to earthquake, mine subsidence, landslide, mudslide or volcanic eruption;

**g.** Lack of power, light, heat, steam or refrigeration, except as provided in the Coverage Extensions Business Income and Extra Expense Coverage and Off Premises Service Interruption;

**h.** Any other indirect result of an "accident" to an "object," except as provided in the Coverage Extensions Business Income and Extra Expense Coverage and Off Premises Service Interruption.

**i.** With respect to the Coverage Extensions Business Income and Extra Expense Coverage and Off Premises Service Interruption, we will not pay for:

**(1)** The interruption of business that would not or could not have been carried on if the "accident" had not occurred;

**(2)** Your failure to use due diligence and dispatch and all reasonable means to resume business at the described premises; or

**(3)** That part of any loss or expense that is due solely to the suspension, lapse or cancellation of a contract following an "accident" extending beyond the time business could have resumed if the contract had not lapsed, been suspended or cancelled.

**j.** With respect to the Coverage Extension– Off Premises Service Interruption, we will not pay for loss caused by or resulting from:

**(1)** Lightning, Wind, Hail, Weight of Snow, Ice or Sleet, Riot, Civil Commotion, Vandalism, Vehicles, Falling Objects, Aircraft, Smoke, Collapse, Water Damage, Rising Water or Flood; or

**(2)** Any interruption of service lasting less than 8 hours.

**C. LIMITS OF INSURANCE**

Any payment made under this Coverage Part will not be increased if more than one insured is shown in the Declarations.

When "Unlimited" is shown in the Declarations for any coverage, we will pay the full amount of the insured loss, subject to all applicable conditions, exclusions and deductibles.

**1. Direct Damage Limit**

For all direct damage to Covered Property caused by an "accident" to an "object," the most we will pay for loss and expense arising from any "one accident" is the amount shown as the Direct Damage Limit in the Declarations.

**2. Business Income and Extra Expense Limit**

Coverage under the Coverage Extension - Business Income and Extra Expense Coverage from any "one accident" will continue up to the amount of time shown in the Declarations as the Business Income and Extra Expense Coverage Limit. However, once your property has been repaired or replaced, any continuing loss resulting from the "accident" will only be covered for 30 days from that point in time.

**3. Other Coverage Extension Limits**

The limit of your insurance under each of the other Coverage Extensions from loss or expense arising from any "one accident" is the amount shown in the Declarations for that Coverage Extension.

**D. DEDUCTIBLE**

We will not pay for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the Combined Deductible for All Applicable Coverages shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable limits.

**E. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, Office, Inc., 1983, 1990



EXHIBIT

1-D

2. **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

**a.** Give us prompt notice of the loss or damage. Include a description of the property involved;

**b.** As soon as possible, give us a description of how, when and where the loss or damage occurred;

**c.** Allow us a reasonable time and opportunity to examine the property and premises before repairs are undertaken or physical evidence of the "accident" is removed. But you must take whatever measures are necessary for protection from further damage;

**d.** Permit us to inspect the property and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis.

**e.** If requested, permit us to question you under oath, at such times as may be reasonably required about any matter relating to this insurance or your claim including your books and records. In such event, your answers must be signed;

**f.** Send us a signed, sworn statement of loss containing the information we re-quest to settle the claim. You must do this within 60 days after our request;

**g.** Cooperate with us in the investigation and settlement of the claim;

**h.** Promptly send us any legal papers or notices received concerning the loss or damage; and

**i.** Make no statement that will assume any obligation or admit any liability, for any loss or damage for which we may be liable, without our consent.

We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Reducing Your Loss**

With respect to Business Income and Extra Expense Coverage and Premises Service Interruption, you must reduce your loss, if possible, by:

**a.** Resuming business, partially or completely;

**b.** Using merchandise or other property available to you; or

**c.** Using the property or services of others.

5. **Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value: or

**(4)** Repair, rebuild, or replace the property with other property of like kind and quality.

**b.** We will give notice of our intentions within 30 days after we receive the proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owner's property. We will not pay the owners more than their financial interest in the Covered Property.

**e.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:

    **(1)** You have complied with all of the terms of this Coverage Part; and

    **(2)** We have reached agreement with you on the amount of loss or an appraisal award has been made and we have not denied the claim.

**6. Valuation**

**a.** We will pay you the amount you spend to repair or replace Covered Property directly damaged by an "accident" to an "object." Our payment will be the smallest of:

    **(1)** The cost to repair the damaged property;

    **(2)** The cost to replace the damaged property; or

    **(3)** The amount you actually spend that is necessary to repair or replace the damaged property.

**b.** If the cost of repairing or replacing a part of an "object" is greater than:

    **(1)** The cost of repairing the entire "object"; or

    **(2)** The cost of replacing the entire "object";

We will pay only the smallest amount.

**c.** If an "object" cannot be repaired or the cost of repairing is more than the cost to replace, and the damage to the "object" equals or exceeds 100% of the actual cash value of the "object," you may choose to apply the following provision.

**New Generation Coverage**–If you want to replace a damaged "object" with a newer generation "object" of the same capacity, we will pay up to 25% more than an "object" of like kind, quality and capacity would have cost at the time of the "accident."

**d.** Except for New Generation Coverage, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a larger capacity.

**e.** We will not pay you if the loss or damage is to property that is obsolete or useless to you.

**f.** If you do not repair or replace the damaged property within 18 months after the date of the "accident," then we will pay only the smaller of the:

    **(1)** Cost it would have taken to repair; or

    **(2)** Actual cash value;

at the time of the "accident."

**7. "Media" Valuation**

We will pay for "media" directly damaged by an "accident" to an "object" at the cost of blank material for reproducing the records. We will not pay for any additional cost to reconstruct programs or reinput data.

**F. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**1. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you relating to it. It is also void if you or any other named insured at any time intentionally conceal or misrepresent a material fact concerning:

    **(1)** This Coverage Part;

    **(2)** The Covered Property;

    **(3)** Your interest in the Covered Property; or

    **(4)** A claim under this Coverage Part.

**2. Legal Action Against Us**

No one may bring a legal action against us under this Policy unless:

**a.** There has been full compliance with all the terms of this Policy; and

**b.** The action is brought within two years and one day next after the date of the "accident"; or

**c.** We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award. No

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, Office, Inc., 1983, 1990

BM T1 41 04 92

one has the right under this Policy to bring us into an action to determine your liability.

### 3. Liberalization

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### 4. Other Insurance

(a) You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable limits under this Coverage Part (or, in the event of Unlimited coverage, the total loss resulting from any "one accident") bears to the Limits of Insurance of all insurance covering on the same basis.

(b) If there is other insurance covering the same loss or damage, other than that described in (a) above, we will pay only the amount of covered loss or damaged in excess of the amount due from that other insurance, whether you can collect on it or not.

In no case will we pay more than the applicable limits (or, if coverage is Unlimited, the total loss resulting from the "accident").

### 5. Policy Period, Coverage Territory

Under this Coverage Part:

a. The "accident" must occur:

(1) During the Policy Period shown in the Declarations; and

(2) Within the Coverage Territory.

b. The Coverage Territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

### 6. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this Coverage Part

has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

This will not restrict your insurance.

### 7. Additional Insured

If a person or organization is designated in this Coverage Part as an additional insured, we will consider them to be an insured under this Coverage Part to the extent of their interest.

### 8. Bankruptcy

The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Coverage Part.

### 9. Suspension

Whenever an "object" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "object." This can be done by delivering or mailing a written notice of suspension to:

a. Your last known address; or

b. The address where the "object" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "object."

### 10. Mortgage Holders

a. The term mortgage holder includes trustee.

b. We will pay for direct damage to Covered Property due to an "accident" to an "object" to each mortgage holder shown in

    Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1990

the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the Covered Property.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership or occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**G. DEFINITIONS**

**1.** "**Accident**" means a sudden and accidental breakdown of the "object" or part of the "object." At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the "object" or part of the "object."

None of the following is an "accident":

**a.** Depletion, deterioration, corrosion, erosion, or wear and tear, unless a sudden and accidental breakdown ensues;

**b.** The breakdown of any structure or foundation; or

**c.** The functioning of any safety or protective device.

**2.** "**Business Income**" means the sum of:

**a.** The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

**3.** "**Extra Expense**" means:

The additional cost you incur to run your business during the interruption over and above the cost that normally would have been incurred to run the business during the same period had no "accident" occurred.

**4.** "**Media**" means all forms of electronic and magnetic tapes and discs, converted data, program or instruction for use in any electronic computer or electronic data processing computer.

**5.** "**Object**" means:

**a.** Unless excluded in the Declarations, the following equipment:

**(1)** Any boiler, including its piping and accessory equipment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, Office, Inc., 1983, 1990

**BM T1 41 04 92**

b. Also means:

(1) Any other fired or unfired vessel subject to vacuum or internal pressure other than weight of contents;

(2) Any refrigerating or air conditioning system, including its piping and accessory equipment;

(3) Any transformer or electrical distribution equipment;

(4) Any telephone switching equipment;

(5) Any other mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power; and

(6) Any fiber optic cables.

c. Does not mean any:

(1) Furnace;

(2) Insulating or refractory material;

(3) Equipment that is beg, or has been, manufactured for sale;

(4) Vehicle, elevator, escalator, conveyor, hoist or crane;

(5) Electronic computer or electronic data processing equipment, unless used to operate one or more insured objects;

(6) "Media" used with any electronic computer or electronic data processing equipment; or

(7) Equipment used for research, diagnostic or medical purposes.

6. "**One Accident**" means:

If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" at any one location that manifest themselves at the same time and are the result of the same cause will be considered "one accident."

7. "**Suit**" means a civil proceeding to which this insurance applies and includes:

a. An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

# INTERLINE
# ENDORSEMENTS

# INTERLINE
# ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc., 2001

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISTRICT OF COLUMBIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the CANCELLATION Common Policy Condition is replaced by the following:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

If this policy has been in effect for 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

If this policy has been in effect more than 30 days, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** You have refused or failed to pay a premium due under the terms of the policy;

**2.** You have made a material and willful misstatement or omission of fact to us or our employees, agents or brokers in connection with any application to or claim against us;

**3.** You have transferred your property or other interest to a person other than you or your beneficiary, unless the transfer is permitted under the terms of the policy; or

**4.** The property, interest or use of the property or interest has materially changed with respect to its insurability.

**B.** The following is added:

NONRENEWAL

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver the notice at least 30 days before the expiration of the policy. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

    © ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE FORM
> COMMERCIAL CRIME POLICY
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> EMPLOYEE THEFT AND FORGERY POLICY
> FARM COVERAGE PART
> GOVERNMENT CRIME COVERAGE FORM
> GOVERNMENT CRIME POLICY
> KIDNAP/RANSOM AND EXTORTION COVERAGE FORM
> KIDNAP/RANSOM AND EXTORTION POLICY
> STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES DUE TO DATES OR TIMES

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE PART
> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

**1.** The failure, malfunction or inadequacy of:

**a.** Any of the following, whether belonging to any insured or to others:

**(1)** Computer hardware, including microprocessors;

**(2)** Computer application software;

**(3)** Computer operating systems and related software;

**(4)** Computer networks;

**(5)** Microprocessors (computer chips) not part of any computer system; or

**(6)** Any other computerized or electronic equipment or components; or

**b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

**1.** In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, or the Commercial Inland Marine Coverage Part; or

**2.** Under the Businessowners Coverage Part:

**a.** In a Covered Cause of Loss under the Businessowners Property Coverage Standard Form, or in elevator collision resulting from mechanical breakdown;

**b.** In a "Specified Cause of Loss", under the Businessowners Property Coverage Special Form, in elevator collision resulting from mechanical breakdown, or from "Theft" of Covered Property,

we will pay only for the loss ("loss") or damage caused by such Covered Cause of Loss, elevator collision, Covered Cause of Loss or "Theft".

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

---

Includes Material Copyrighted by
Insurance Services Office

# POLICYHOLDER NOTICES

 **ST. PAUL TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**CHANGE ENDORSEMENT**

**INSURING COMPANY:**
THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

**Named Insured:**    1700 KALORAMA CONDO LLC

**Policy Number:**    I-680-5076B416-TCT-04
**Policy Effective Date:**    11-12-04
**Policy Expiration Date:**    11-12-05
**Issue Date:**    11-29-04
**Premium $**              NIL

Effective from  11-12-04  at the time of day the policy becomes effective.

THIS INSURANCE IS AMENDED AS FOLLOWS:

ON THE COMMON POLICY DECLARATIONS, ITEM 1. NAMED INSURED AND MAILING
ADDRESS ARE CHANGED TO:
1700 KALORAMA LOFTS
THE NEW WASHINGTON LAND CO
1804 T STREET
WASHINGTON, DC 20009

NAME AND ADDRESS OF AGENT OR BROKER

Countersigned by

CLARKE & SAMPSON INC        HG208
228 S WASHINGTON ST STE 200
ALEXANDRIA                    VA  22314-5404

_____
Authorized Representative

DATE: _____

**IL T0 07 09 87**  (Page 01 of 01)

Office:  CHANTILLY/WASHDC

**POLICY NUMBER:** I-680-5076B416-TCT-04

**EFFECTIVE DATE:** 11-12-04

**ISSUE DATE:** 11-29-04

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

IL T0 07 09 87    CHANGE ENDORSEMENT

IL T8 01 01 01                                        PAGE:    1 OF    1



**Notice of Cancellation**

ST. PAUL TRAVELERS
DBS - 226 5076B416 680    041112
P.O. BOX 26385
RICHMOND, VA  23260-6385

Account 3548B7106

Page 1 of 3

226

1700 KALORAMA LOFTS
C/O THE NEW WASHINGTON LAND CO
1804 T STREET, NW
WASHINGTON       DC   20009

**YOUR INSURANCE POLICY IS SUBJECT TO CANCELLATION.    PLEASE
SEE REVERSE SIDE FOR NOTICE OF CANCELLATION.**

CLDBNOC

**ST PAUL TRAVELERS**

Commercial Package

## NOTICE OF CANCELLATION
## FOR NON-PAYMENT OF PREMIUM

**POLICY NO.** 5076B416 680

**Issue Date** 12/27/04

**ACCOUNT** 3548B7106

Insuring Company: THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

**Page 2 of 3**

| Named Insured and Mailing Address | 1700 KALORAMA LOFTS<br>C/O THE NEW WASHINGTON LAND CO<br>1804 T STREET, NW<br>WASHINGTON    DC 20009 |
|---|---|

Agent  CLARKE & SAMPSON INC

Please contact your agent
if you have any questions.
PHONE: (703) 683-6601

## EFFECTIVE DATE OF CANCELLATION:  FEBRUARY 05, 2005

We are pleased to have you as a customer and would like to continue to provide your insurance.  Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice is cancelled on the effective date of cancellation shown above, and at the time the policy became effective. We will refund any premium due you. We regret having to take this action, and will be pleased to reinstate this coverage if we receive your payment on or before the effective date of cancellation. In that event, we will send you a notice of reinstatement continuing your coverage.

### Premium Information

| POLICY NUMBER  5076B416 680 | POLICY PERIOD 11/12/04 To 11/12/05 | | |
|---|---|---|---|
| Previous balance                  $16,286.00<br>Installment charge                  +6.00<br>Late Payment Charge                +10.00 | Pay<br>Either<br>Amount | MINIMUM DUE    $6,807.35<br><br>TOTAL DUE    $16,296.00 | |
| | By | DUE DATE    FEBRUARY 05, 2005 | |

If you wish to reinstate your policy, you must pay the MINIMUM DUE by the effective date of cancellation.  The MINIMUM DUE shown above includes:

```
$5,428.12 that was due on 12/15/04;
$1,357.23 that is  due on 02/05/05;
    $6.00 for prior installment charges;
    $6.00 for current installment charge;
   $10.00 for late payment charge.
```

*Please detach the return stub and mail with your payment in the enclosed envelope to:*
ST. PAUL TRAVELERS, CL & SPECIALTY REMITTANCE CENTER, HARTFORD, CT 06183-1008.
................................................................................

648844N    2004362    5747    226 0HG208

## Payment Coupon   *Make checks payable to:* ST. PAUL TRAVELERS

CLARKE & SAMPSON INC
1700 KALORAMA LOFTS

Include Account Number on the check.

3548B7106       5076B416 680

| | Change of Address?<br>Place an "X" here.<br>Print changes on reverse side. | TOTAL BALANCE<br>$16,296.00 |
|---|---|---|
| | | MINIMUM DUE<br>$6,807.35 |

PAYMENT MUST BE RECEIVED BY
FEBRUARY 05, 2005

AMOUNT ENCLOSED

ST. PAUL TRAVELERS
CL & SPECIALTY REMITTANCE CENTER
HARTFORD, CT 06183-1008

*C*

99333534380237313036403939393972000680735001629600020

**ST PAUL**
**TRAVELERS**

**Notice of Cancellation**

Account 3548B7106

Page 3 of 3

Replacement of Property (Fire) Insurance: If you wish to replace your insurance, you should make an effort to obtain insurance through another company in the voluntary market. If you have difficulty in procuring replacement coverage in the voluntary market you possibly may obtain fire and extended coverage and vandalism and malicious mischief insurance through the District of Columbia Property Insurance Facility (FAIR Plan). For further information, please contact your agent or the FAIR Plan at: District of Columbia Property Insurance Facility, 601 Pennsylvania Ave. NW, Suite 900, South Bldg, Washington, DC 20004 (Telephone: 202-393-4640).

A late charge has been assessed on your account because we have not received your previous minimum due. This account level charge is listed on this notice. An account level bill or other notice(s) may also be mailed to you today.

Appeal to the Commissioner: If you dispute the validity of this cancellation, you have the right to appeal the cancellation to the Commissioner by notifying the Commissioner in writing of your decision to appeal. Written notification must be sent to the Commissioner at any time before the effective date of the cancellation. A copy of the written decision to appeal must be sent to your insurer at the same time the appeal is sent to the Commissioner. The address of the Insurance Commissioner is: Department of Insurance and Securities Regulation, Office of the Commissioner, 810 First Street, N.E., Suite 701, Washington, DC 20002 (Tel. 202-727-8000).

The account number shown above consists of your CL policy number and policy form.  For the complete policy number refer to your policy paper.

This bill is rendered by The St. Paul Travelers affiliated company indicated on the policy shown on this notice.

************************************* QUESTIONS? *************************************

If you have any questions about this statement, please contact your Agent, St. Paul Travelers Billing Customer Service or the St. Paul Travelers on-line Telephone Inquiry Service. To reach St. Paul Travelers Billing Customer Service or the Telephone Inquiry dial 1-800-252-2268 and follow the instructions.
Your 9 character billing account number is: --- 3548B7106.

CLDBNOC3

CLARKE & SAMPSON INC
228 S WASHINGTON ST STE 200
ALEXANDRIA VA  22314-5404

Date of this Notice                02/04/05
Account No.    3548B7106

1700 KALORAMA LOFTS
C/O THE NEW WASHINGTON LAND CO
1804 T STREET, NW
WASHINGTON      DC  20009

Please contact your agent
with any questions, future
policy changes and all
address changes.

CLARKE & SAMPSON INC
(703) 683-6601

**Insuring Company:** THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

# REINSTATEMENT NOTICE

We are pleased to tell you that your policy has been reinstated.

| POLICYHOLDER | POLICY IDENTIFICATION NUMBER |
|---|---|
| 1700 KALORAMA LOFTS | 5076B416 680 |
| TYPE OF INSURANCE | POLICY PERIOD |
| Commercial Package | 11/12/04 To 11/12/05 |

Receipt of funds dishonored upon presentment is not a valid means of
reinstatement.  Reinstatement will only occur when all conditions have
been met.  If these conditions have not been met the reinstatement will
be null and void.

We understand that circumstances will occasionally cause a payment to
arrive late, but please be aware that if future payments don't reach us
on time, WE MAY REQUIRE FULL PAYMENT OF THE OUTSTANDING BALANCE ON YOUR
POLICY.  Please contact your St. Paul Travelers representative if you have
questions concerning this notice.  Thank you for your business.

648826R     2005035     5775     226 0HG208

CLDBREIN



**Notice of Cancellation**

ST. PAUL TRAVELERS
DBS - 226 5076B416 680    041112
P.O. BOX 26385
RICHMOND, VA  23260-6385

Account 3548B7106

Page 1 of 3

226

1700 KALORAMA LOFTS
C/O THE NEW WASHINGTON LAND CO
1804 T STREET, NW
WASHINGTON      DC  20009

**YOUR INSURANCE POLICY IS SUBJECT TO CANCELLATION.    PLEASE
SEE REVERSE SIDE FOR NOTICE OF CANCELLATION.**

CLDBNOC

## NOTICE OF CANCELLATION
## FOR NON-PAYMENT OF PREMIUM

Insuring Company: THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

**POLICY NO.** 5076B416 680
**Issue Date** 04/25/05
**ACCOUNT** 3548B7106
Page 2 of 3

| Named Insured and Mailing Address | 1700 KALORAMA LOFTS<br>C/O THE NEW WASHINGTON LAND CO<br>1804 T STREET, NW<br>WASHINGTON   DC 20009 |
|---|---|

Agent  CLARKE & SAMPSON INC

Please contact your agent
if you have any questions.
PHONE: (703) 683-6601

**EFFECTIVE DATE OF CANCELLATION:    JUNE 04, 2005**

We are pleased to have you as a customer and would like to continue to provide your insurance.  Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice is cancelled on the effective date of cancellation shown above, and at the time the policy became effective. We will refund any premium due you. We regret having to take this action, and will be pleased to reinstate this coverage if we receive your payment on or before the effective date of cancellation. In that event, we will send you a notice of reinstatement continuing your coverage.

### Premium Information

POLICY NUMBER  5076B416 680 | POLICY PERIOD 11/12/04 To 11/12/05

| | | |
|---|---|---|
| Previous balance | $7,917.21 | Pay |
| Installment charge | +12.00 | Either |
| Late Payment Charge | +10.00 | Amount |

| | MINIMUM DUE | $7,939.21 |
| | TOTAL DUE | $7,939.21 |
| By | **DUE DATE** | **JUNE 04, 2005** |

This is your second cancellation notice for nonpayment of past due premium.  Therefore, we require full payment of the outstanding balance by the due date to reinstate coverage.

*Please detach the return stub and mail with your payment in the enclosed envelope to:*
**ST. PAUL TRAVELERS, CL & SPECIALTY REMITTANCE CENTER, HARTFORD, CT 06183-1008.**

648844N    2005115  5831  226 0HG208

**Payment Coupon**  *Make checks payable to:* ST. PAUL TRAVELERS

CLARKE & SAMPSON INC
1700 KALORAMA LOFTS

3548B7106        5076B416 680

Include Account Number on the check.

Change of Address?
Place an "X" here.
Print changes on reverse side.

| TOTAL BALANCE |
|---|
| $7,939.21 |
| MINIMUM DUE |
| $7,939.21 |
| AMOUNT ENCLOSED |

ST. PAUL TRAVELERS
CL & SPECIALTY REMITTANCE CENTER
HARTFORD, CT 06183-1008

**PAYMENT MUST BE RECEIVED BY**
**JUNE 04, 2005**

*C*

99333534380237313036403939393972000793921000793921 73

**ST PAUL TRAVELERS**

**Notice of Cancellation**

Account 3548B7106

Page 3 of 3

Replacement of Property (Fire) Insurance: If you wish to replace your insurance, you should make an effort to obtain insurance through another company in the voluntary market. If you have difficulty in procuring replacement coverage in the voluntary market you possibly may obtain fire and extended coverage and vandalism and malicious mischief insurance through the District of Columbia Property Insurance Facility (FAIR Plan). For further information, please contact your agent or the FAIR Plan at: District of Columbia Property Insurance Facility, 601 Pennsylvania Ave. NW, Suite 900, South Bldg, Washington, DC 20004 (Telephone: 202-393-4640).

A late charge has been assessed on your account because we have not received your previous minimum due. This account level charge is listed on this notice. An account level bill or other notice(s) may also be mailed to you today.

Appeal to the Commissioner: If you dispute the validity of this cancellation, you have the right to appeal the cancellation to the Commissioner by notifying the Commissioner in writing of your decision to appeal. Written notification must be sent to the Commissioner at any time before the effective date of the cancellation. A copy of the written decision to appeal must be sent to your insurer at the same time the appeal is sent to the Commissioner. The address of the Insurance Commissioner is: Department of Insurance and Securities Regulation, Office of the Commissioner, 810 First Street, N.E., Suite 701, Washington, DC 20002 (Tel. 202-727-8000).

The account number shown above consists of your CL policy number and policy form.  For the complete policy number refer to your policy paper.

This bill is rendered by The St. Paul Travelers affiliated company indicated on the policy shown on this notice.

************************************* QUESTIONS? *************************************

If you have any questions about this statement, please contact your Agent, St. Paul Travelers Billing Customer Service or the St. Paul Travelers on-line Telephone Inquiry Service. To reach St. Paul Travelers Billing Customer Service or the Telephone Inquiry dial 1-800-252-2268 and follow the instructions. Your 9 character billing account number is: --- 3548B7106.

648844N    2005115   5831    226 0HG208

CLDBNOC3

CLARKE & SAMPSON INC
228 S WASHINGTON ST STE 200
ALEXANDRIA VA  22314-5404

Date of this Notice          05/02/05
Account No.   3548B7106

1700 KALORAMA LOFTS
C/O THE NEW WASHINGTON LAND CO
1804 T STREET, NW
WASHINGTON      DC  20009

Please contact your agent
with any questions, future
policy changes and all
address changes.

CLARKE & SAMPSON INC
(703) 683-6601

**Insuring Company:** THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

# REINSTATEMENT NOTICE

We are pleased to tell you that your policy has been reinstated.

| POLICYHOLDER | POLICY IDENTIFICATION NUMBER |
|---|---|
| 1700 KALORAMA LOFTS | 5076B416 680 |
| TYPE OF INSURANCE | POLICY PERIOD |
| Commercial Package | 11/12/04 To 11/12/05 |

Receipt of funds dishonored upon presentment is not a valid means of
reinstatement.  Reinstatement will only occur when all conditions have
been met.  If these conditions have not been met the reinstatement will
be null and void.

648826R     2005122     5836     226 0HG208



**Notice of Cancellation**

ST. PAUL TRAVELERS
DBS - 226 5076B416 680     041112
P.O. BOX 26385
RICHMOND, VA  23260-6385

Account 3548B7106

Page 1 of 3

226

1700 KALORAMA LOFTS
C/O THE NEW WASHINGTON LAND CO
1804 T STREET, NW
WASHINGTON      DC  20009

**YOUR INSURANCE POLICY IS SUBJECT TO CANCELLATION.   PLEASE SEE REVERSE SIDE FOR NOTICE OF CANCELLATION.**

CLDBNOC

# NOTICE OF CANCELLATION
# FOR NON-PAYMENT OF PREMIUM

| | |
|---|---|
| **POLICY NO.** | 5076B416 680 |
| **Issue Date** | 06/27/05 |
| **ACCOUNT** | 3548B7106 |

Insuring Company: THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

**Page 2 of 3**

| Named Insured and Mailing Address | |
|---|---|
| 1700 KALORAMA LOFTS | |
| C/O THE NEW WASHINGTON LAND CO | |
| 1804 T STREET, NW | |
| WASHINGTON   DC 20009 | |

Agent  CLARKE & SAMPSON INC

Please contact your agent
if you have any questions.
PHONE: (703) 683-6601

## EFFECTIVE DATE OF CANCELLATION:   AUGUST 06, 2005

We are pleased to have you as a customer and would like to continue to provide your insurance.  Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice is cancelled on the effective date of cancellation shown above, and at the time the policy became effective. We will refund any premium due you. We regret having to take this action, and will be pleased to reinstate this coverage if we receive your payment on or before the effective date of cancellation. In that event, we will send you a notice of reinstatement continuing your coverage.

### Premium Information

POLICY NUMBER  5076B416 680          POLICY PERIOD  11/12/04 To 11/12/05

| Previous balance | $4,760.33 | Pay | MINIMUM DUE | $4,770.33 |
|---|---|---|---|---|
| Late Payment Charge | +10.00 | Either | | |
| | | Amount | TOTAL DUE | $4,770.33 |
| | | By | **DUE DATE** | AUGUST 06, 2005 |

Replacement of Property (Fire) Insurance: If you wish to replace your insurance, you should make an effort to obtain insurance through another company in the voluntary market. If you have difficulty in procuring replacement coverage in the voluntary market you possibly may obtain fire and extended coverage and vandalism and malicious mischief insurance through the District of Columbia Property Insurance Facility (FAIR Plan). For further information, please contact your agent or the FAIR Plan at: District of Columbia Property Insurance Facility, 601 Pennsylvania Ave. NW, Suite 900, South Bldg, Washington, DC 20004 (Telephone: 202-393-4640).

*Please detach the return stub and mail with your payment in the enclosed envelope to:*
ST. PAUL TRAVELERS, CL & SPECIALTY REMITTANCE CENTER, HARTFORD, CT 06183-1008.

648844N   2005178  5875  226 0HG208

## Payment Coupon   *Make checks payable to:* ST. PAUL TRAVELERS

CLARKE & SAMPSON INC
1700 KALORAMA LOFTS

Include Account Number on the check.

3548B7106      5076B416 680

| | Change of Address? Place an "X" here. Print changes on reverse side. | **TOTAL BALANCE** $4,770.33 |
|---|---|---|
| | | **MINIMUM DUE** $4,770.33 |
| | PAYMENT MUST BE RECEIVED BY AUGUST 06, 2005 | **AMOUNT ENCLOSED** |

ST. PAUL TRAVELERS
CL & SPECIALTY REMITTANCE CENTER
HARTFORD, CT 06183-1008

*C*

993335343802373130364039393939720004770300047703341


**ST PAUL TRAVELERS**

**Notice of Cancellation**

Account 3548B7106

Page 3 of 3

A late charge has been assessed on your account because we have not received your previous minimum due. This account level charge is listed on this notice. An account level bill or other notice(s) may also be mailed to you today.

Appeal to the Commissioner: If you dispute the validity of this cancellation, you have the right to appeal the cancellation to the Commissioner by notifying the Commissioner in writing of your decision to appeal. Written notification must be sent to the Commissioner at any time before the effective date of the cancellation. A copy of the written decision to appeal must be sent to your insurer at the same time the appeal is sent to the Commissioner. The address of the Insurance Commissioner is: Department of Insurance and Securities Regulation, Office of the Commissioner, 810 First Street, N.E., Suite 701, Washington, DC 20002 (Tel. 202-727-8000).

The account number shown above consists of your CL policy number and policy form. For the complete policy number refer to your policy paper.

This bill is rendered by The St. Paul Travelers affiliated company indicated on the policy shown on this notice.

*********************************** QUESTIONS? ***************************************

If you have any questions about this statement, please contact your Agent, St. Paul Travelers Billing Customer Service or the St. Paul Travelers on-line Telephone Inquiry Service. To reach St. Paul Travelers Billing Customer Service or the Telephone Inquiry dial 1-800-252-2268 and follow the instructions. Your 9 character billing account number is: --- 3548B7106.

648844N    2005178    5875    226 0HG208                    CLDBNOC3

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

0005141-06

Tommy Rodgers and Sharon Bresin,
individually and jointly,
1700 Kalorama Road, N.W.
#402
Washington, D.C. 20009

        v.

RWN Development Group, LLC
1700 Kalorama Road, N.W.
Washington, D.C. 20009
        Serve: Registered Agent: CT Corporation System
        1025 Vermont Ave., N.W.
        Washington, DC 20005,

1700 Kalorama Condominium LLC
1700 Kalorama Road, N.W.
Washington, D.C. 20009
        Serve: Registered Agent: CT Corporation System
        1025 Vermont Ave., N.W.
        Washington, DC 20005,

RICHARD W. NAING, individually
and as manager and owner of RWN Development Group, LLC
and 1700 Kalorama Condominium LLC
9410 River Road
Potomac, MD 20854

RECEIVED
Clerk's Office

JUL  C E 2006

Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

(Breach of Contract, Negligence, Intentional Misrepresentations, Negligent Misrepresentations,
Concealment or Non-disclosure, Violation of Statute – Unfair and Deceptive Trade Practices)

COMES NOW, TOMMY RODGERS and SHARON BRESIN, by and through their

attorneys, Michael M. Ain and Ain & Stein, LLC, and sues RWN DEVELOPMENT GROUP,

LLC, 1700 KALORAMA CONDOMINIUM LLC, and RICHARD W. NAING, individually and

1

EXHIBIT

2

as manager and owner of Rwn Development Group, LLC and 1700 Kalorama Condominium, and as reasons therefor state as follows:

1.    That at all pertinent times hereto, Plaintiffs were residents of the District of Columbia and the purchasers of Unit 402 located at 1700 Kalorama Road, N.W., Washington, DC and Parking Unit 212 located at the same address (both Unit 402 and parking unit hereinafter referred to as the "subject property") .

2.    That at all pertinent times hereto, Defendant RWN Development Group, LLC, was a Maryland limited liability company doing business in the District of Columbia and was the developer of 1700Kalorama Condominium LLC and Declarant of said condominium as that term is defined in §42-1901.01 of the District of Columbia Code 2001 Edition.

3.    That at all pertinent times hereto, Defendant 1700 Kalorama Condominium LLC, was a District of Columbia limited liability company and the developer of 1700Kalorama Condominium LLC and Declarant of said condominium as that term is defined in §42-1901.01 of the District of Columbia Code 2001 Edition.

4.    That at all pertinent times hereto, Defendant Richard W. Naing was a licensed real estate broker; he was the owner, general partner and manager of RWN Development Group, LLC and owner, general partner and manager of 1700 Kalorama Condominium LLC and an Affiliate of the Declarant as that term is defined in §42-1901.01 of the District of Columbia Code 2001 Edition.and is the owner, general partner, director, manager, employer of the declarant and controls and managers RWN, LLC.

5.    That at all pertinent times hereto Defendants were in the business of developing and selling real estate including the condominium located at 1700 Kalorama Road, N.W., Washington, DC, the subject property.

2

6.     That at all pertinent times hereto, Defendants were the agents, servants and/or employees of one to the other or engaged in a joint venture with each other for their mutual profit.

7.     That at all pertinent times hereto, all persons who designed and built the subject property, including the installation the HVAC system, and who were engaged in the selling of the subject property to the Plaintiffs were engaged in a joint venture with the Defendants for their mutual profit and/or were the agents, servants or employees of the Defendants.

8.     That on or about February 21, 2004 Plaintiffs entered into a real estate transaction with the Defendants to purchase unit 402 of 1700 Kalorama Road, N.W., Washington, D.C. and "tandem" parking unit 212 for the purchase price of $830,000 which was paid by Plaintiffs as set forth in the contract attached hereto as Exhibit 1.

9.     Pursuant to Exhibit 1 Defendants contracted with Plaintiffs to provide:

   a.     A tandem parking unit for parking two horizontal motor vehicles for an additional cost of $52,250 (included in the purchase price of $830,000), a premium of $20,250 over the price of a single car parking unit which Defendants, individually or through their agents, servants and employees, represented would allow Plaintiffs to park their two vehicles horizontally.

   b.     An approximate 504 square foot roof top terrace to be used for parties, barbeques, entertainment and other appropriate use of Plaintiffs' choice.

   c.     A properly installed, sized and functioning heating and air conditioning system (hereinafter HVAC system).

10.    That before entering into the purchase of the subject property and parking unit Defendants, individually and through their agents, servants and employees, made the following representations which Plaintiffs reasonably relied upon in entering into the

3

purchase agreement with the Defendants:

a.    That the roof top terrace was designed to allow Plaintiffs to use it for any reasonable activity they chose including for entertainment purposes, barbeques, lounging, social occasions and other similar activities.

b.    That the tandem parking unit 212, for which Plaintiffs paid a premium, would allow Plaintiffs to park two vehicles horizontally.

c.    That the HVAC system was designed to keep the subject property at a reasonable temperature and Defendants impliedly warranted that the HVAC system was sized in accordance with appropriate industry standards and installed pursuant to the approved plans for which they obtained building permits.

11.    That following their habitation of the subject property Plaintiffs discovered the following conditions:

a.    That the roof terrace was not suited for its intended due use due to chronic standing water preventing any appropriate use by Plaintiffs of the roof top terrace.

b.    That the parking unit for which they paid an additional $20,250 was not large enough to fit two vehicles; it was only large enough for one vehicle.

c.    That the HVAC system was poorly designed and installed, that it was not in conformance with the plans Defendants submitted to the District of Columbia Department of Regulatory Affairs and not in conformance with the permits obtained by the Defendants and that it lacked the capacity to maintain the subject property at a reasonable temperature. The system installed by Defendants was undersized for its intended purpose, the furnace blower is too small to accommodate a larger air conditioning unit, the size and distribution of the duct

4

work and diffusers were inadequate, no allowance was made for appropriate

return air ducts and the HVAC system was otherwise inadequate, poorly designed

and installed by Defendants and their agents, servants and employees and

otherwise inappropriate for the subject property. [See Exhibit 2]

12.    That, pursuant to their contract with Defendants, Plaintiffs notified Defendants of the

deficiencies and defects set forth herein; Defendants have refused to correct said

deficiencies and defects.

13.    That, due to Defendants refusal to correct the deficiencies and defects,  Plaintiffs were

required to take the following actions:

a.    Plaintiffs installed a raised terrace on the roof at a cost of $9287.00.

b.    Plaintiffs installed a car lift at a cost of $6021.49.

c.    Plaintiffs obtained an estimate to correct and repair the HVAC system.

14.    That Defendants have repeatedly refused to correct the HVAC system; the cost to

Plaintiffs to correct said system is $24,560 (Exhibit 2).

15.    That at all pertinent times hereto Defendants had a duty to exercise reasonable care in

making representations concerning the subject property.

16.    That Defendant Naing, as a licensed real estate broker, is required to have special

Knowledge of his duties as a licensed real estate broker.  His assertion of facts which are

not true subjects him to liability.

17.    Defendants knew that Plaintiffs would reasonably rely upon their representations and the

representations made by their agents, servants and employees.

18.    Plaintiffs were entitled to and did reasonably rely on the representations of the

Defendants and their agents, servants and employees and entered into their purchase of

the subject premises based on said representations.

19.    When Defendants, individually and through their agents, servants and employees, made

the representations set forth in paragraph 9 hereof they knew or should have

known with the exercise of due diligence that said representations were false.

## COUNT I
### (Breach of Contract)

20.    Plaintiffs incorporate herein by reference paragraphs 1-19 hereof as though fully repeated

herein.

21.    Defendants breached their contract with the Plaintiffs by failing to provide an adequate

HVAC system, a parking unit to allow sufficient space to park two cars horizontally, and

a properly designed and installed rooftop terrace.

22.    That as a direct and proximate result of the breach of the contract the Defendants

Plaintiffs have incurred or will incur the expenses in the amount of $60,118.49 as set

forth in paragraphs 9, 13 and 14 and, in addition thereto, Plaintiffs have suffered from

consequential damage including but not limited to loss of enjoyment of their unit and

diminished value of their unit and other injuries, damages and losses all in the amount of

$125,000.

WHEREFORE, Plaintiffs, Tommy Rodgers and Sharon Bresin, demand judgment

against the Defendants, RWN Development Group, LLC, 1700Kalorama Condominium LLC,

and RICHARD W. NAING, jointly and severally, in the amount of $125,000 together with their

costs, interests and attorneys fees.

## COUNT II
### (Intentional Misrepresentation-Fraudulent Inducement)

23.    Plaintiffs incorporate hereing by reference paragraphs 1- 22 hereof as though fully

repeated herein.

24.   That at all pertinent times hereto Defendants intentionally misrepresented the quality, condition and use of the subject property as set forth in Paragraph 10 hereof thereby fraudulently inducing the Plaintiffs to enter into a contract with the Defendants to purchase the subject property.

25.   That the Defendants knew or should have known that the HVAC system did not comply with the plans submitted to the District of Columbia upon which the Defendants obtained permits to begin construction, and that, the HVAC system was otherwise undersized and inadequate to maintain a reasonable temperature in the subject property, that the rooftop terrace was not designed to allow for proper drainage of water thereby making its use by Plaintiffs and other similarly situated unit owners impracticable and impossibe, that the tandem parking unit was not long enough to accommodate the vehicles owned by Plaintiffs or any other reasonable vehicles.

26.   That Defendants knew that representations were false when made and that these representations were made to induce the Plaintiffs to purchase the subject property.

27.   That, in reliance upon Defendants' representations, Plaintiffs purchased the subject property.

28.   That the Defendants' representations were material and Plaintiffs reasonably relied upon Defendants' representations.

29.   That as a direct and proximate result of the breach of the contract the Defendants Plaintiffs have incurred or will incur the expenses in the amount of $60,118.49 as set forth in paragraphs 9, 13 and 14 and, in addition thereto, Plaintiffs have suffered from consequential damage including but not limited to loss of enjoyment of their unit,

7

diminished value of their unit, and discomfort and emotional distress all in the amount of $125,000 and have sustained other costs including attorney fees.

WHEREFORE, Plaintiffs, Tommy Rodgers and Sharon Bresin, demand judgment against the Defendants, RWN Development Group, LLC, 1700Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of $125,000 and punitive damages in the amount of $250,000 together with their costs, interests and attorneys fees.

## COUNT III
### (Negligent Misrepresentation)

30. Plaintiffs incorporate herein by reference Paragraphs 1 through 29 hereof as though fully repeated herein.

31. That Defendants had the duty to exercise due care in making representations of fact to the Plaintiffs; this duty of care required Defendants to transmit accurate information to Plaintiffs including representations regarding the tandem parking unit, the HVAC system and the rooftop terrace adjoining Plaintiffs' unit.

32. That before entering into the sale of the subject property and parking unit Defendants, individually and through their agents, servants and employees, made the following representations which Plaintiffs reasonably relied upon in entering into the purchase agreement with the Defendants:

a. That the rooftop terrace was designed to allow Plaintiffs to use it for any reasonable activity they chose including for entertainment purposes, barbeques, lounging, social occasions and other similar activities.

b. That tandem parking unit 212 for which Plaintiffs paid a premium was designed to hold Plaintiffs' two vehicle horizontally.

8

c.     That the subject property included an HVAC system and impliedly represented
that this system was designed to maintain the subject property as a reasonable
temperature. Defendants impliedly warranted that the HVAC system was sized in
accordance with appropriate industry standards and installed pursuant to the
approved plans for which they obtained building permits.

33.    That the Defendants knew or should have known that these representations were not true
and Defendants further knew or should have known that:

a.     That chronic standing water and poor drainage made the terrace unfit for its
intended use by Plaintiffs;

b.     That the tandem parking unit was not sufficiently long to accommodate Plaintiffs'
vehicles or two reasonably sized vehicles; and

c.     That the HVAC was undersized for the subject property, that it had been
downsized and other changes were made which made it unfit for its intended
purpose of keeping the subject property at a reasonable temperature.

34.    That Defendants knew or should have known that Plaintiffs were reasonably relying on
these representations in entering into their contract with Defendants to purchase subject
property.

35.    That as a direct and proximate result of the conduct of Defendants and its agents, servants
and employees in making these representations Plaintiffs were caused to incur and will
incur expenses in the amount of $60,118.49 as set forth in paragraphs 9, 13 and 14 and, in
addition thereto, Plaintiffs have suffered from consequential damage including but not
limited to loss of enjoyment of their unit, diminished value of their unit, and discomfort
and emotional distress all in the amount of $125,000 and have sustained other costs

9

including attorney fees..

WHEREFORE, Plaintiffs, Tommy Rodgers and Sharon Bresin, demand judgment against the Defendants, RWN Development Group, LLC, 1700Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of $125,000 together with their costs, interests and attorneys fees.

## COUNT IV
### (Concealment or Non-Disclosure)

36.   Plaintiffs incorporate herein by reference paragraphs 1-35 hereof as though fully repeated herein.

37.   That between the time of obtaining the permits to construct the subject property and the installation of the HVAC system Defendants changed the size and capacity of the system, the location of the duct work, including return air ducts and made other changes thereby making the HVAC system inadequate to keep the subject property at a reasonable temperature; Defendants knew or should have known that the HVAC system did not meet the requirements of the subject property.

38.   That Defendants knew or should have known that the length of the tandem parking unit which Plaintiffs purchased at a premium was not sufficient to accommodate two automobiles.

39.   That Defendants knew or should have known that due to chronic standing water and poor drainage, the roof terrace, was not suitable to be used as a terrace.

40.   That Defendants had a duty to disclose the facts set forth in this Complaint including but not limited to Paragraph 33 of this Complaint.

41.   That as a direct and proximate result of the failure of the Defendants to disclosure

10

material information set forth herein Plaintiffs have incurred or will incur the expenses in

the amount of $60,118.49 as set forth in paragraphs 9, 13 and 14 and, in addition thereto,

Plaintiffs have suffered from consequential damage including but not limited to loss of

enjoyment of their unit, diminished value of their unit, and discomfort and emotional

distress all in the amount of $125,000 and have sustained other costs including attorney

fees.

WHEREFORE, Plaintiffs, Tommy Rodgers and Sharon Bresin, demand judgment

against the Defendants, RWN Development Group, LLC, 1700Kalorama Condominium LLC,

and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of

$125,000 and punitive damages in the amount of $250,000 together with their costs, interests and

attorneys fees.

### COUNT V
#### (Violation of Statute/Deceptive Trade Practice)

42.    Plaintiffs incorporate herein by reference paragraphs 1- 41 hereof as though fully repeated

herein.

43.    By making the representations set forth herein including but not limited to Paragraph 10

hereof when Defendants knew or should have known such representations were false or

misleading and by engaging in other practices, Defendants engaged in unlawful trade

practices and committed unfair and deceptive trade practices in violation of §28-3904 of

the District of Columbia Code.

44.    That pursuant to §§ 28-3901 et seq. of the District of Columbia Code, in particular, §28-

3905(k)(1) Plaintiffs are entitled to treble damages, reasonable attorney's fees, punitive

damages and other relief that the Court deems proper.

45.    That as a direct and proximate result of the Defendants' violation of the District of

11

Columbia Consumer Protection Act, §§28-1901 et seq. of the District of Columbia Code Plaintiffs were caused to incur and will incur expenses in the amount of $60,118.49 as set forth in paragraphs 9, 13 and 14 and, in addition thereto, Plaintiffs have suffered from consequential damage including but not limited to loss of enjoyment of their unit, diminished value of their unit, and discomfort and emotional distress all in the amount of $125,000 and have sustained other costs including attorney fees..

WHEREFORE, Plaintiffs, Tommy Rodgers and Sharon Bresin, demand judgment against the Defendants, RWN Development Group, LLC, 1700Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of $375,000 and punitive damages in the amount of $250,000 together with their costs, interests and attorneys fees.

## COUNT VI
### (Negligence)

46.    Plaintiffs incorporate herein by reference paragraphs 1-45 hereof as though fully repeated herein.

47.    That Defendants and their agents, servants and employees and joint venturers had a duty to properly and adequately design and install the rooftop terrace, parking unit and HVAC system.

48.    That Defendants and their agents, servants and employees and joint venturers violated their aforementioned duties by failing to make the parking unit long enough to accommodate two vehicles horizontally, by failing to properly and adequately design and install the HVAC system so that it could maintain the subject property at a reasonable temperature, by failing to properly and adequately design and install the roof so that Plaintiffs would be able to use the rooftop in accordance with the Defendants

representations and Defendants were otherwise negligent.

49. That as a direct and proximate result of the Defendants' negligence, as aforesaid,

Plaintiffs have incurred or will incur the expenses in the amount of $60,118.49 as set

forth in paragraphs 9, 13 and 14 and, in addition thereto, Plaintiffs have suffered from

consequential damage including but not limited to loss of enjoyment of their unit,

diminished value of their unit, and discomfort and emotional distress all in the amount of

$125,000.

WHEREFORE, Plaintiffs, Tommy Rodgers and Sharon Bresin, demand judgment against

the Defendants, RWN Development Group, LLC, 1700Kalorama Condominium LLC, and

RICHARD W. NAING, jointly and severally, in the amount of $125,000 together with their

costs, interests and attorneys fees.

Respectfully submitted,

Ain & Stein, LLC

By: MICHAEL M. AIN, Esquire
Bar # 227421
Suite 500
401 North Washington St.
Rockville, MD 20850
301-838-0199

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues raised in this Complaint.

MICHAEL M. AIN

13

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

Julia Hyman Tomala                              :
1700 Kalorama Road, N.W., #401
Washington, D.C. 20009                          :

              Plaintiff       :          0005505-06

      v.                                        :     Civil Action No.

RWN Development Group, LLC                       :
1700 Kalorama Road, N.W.
Washington, D.C. 20009                           :
      Serve: Registered Agent:
          Potomac Process Agents, Inc.     :
          1615 L Street, N.W.
          Suite 1200                       :
          Washington, DC 20036
                        :

1700 Kalorama Condominium LLC                    :
1700 Kalorama Road, N.W.
Washington, D.C. 20009                           :
      Serve: Registered Agent: CT Corporation
               System        :
          1025 Vermont Ave., N.W.          :
          Washington, DC 20005
                        :

and                                              :

RICHARD W. NAING, individually and               :
as manager and owner of RWN Development
Group, LLC and 1700 Kalorama Condominium LLC
9410 River Road                                  :
Potomac, MD 20854

              Defendants.      :

RECEIVED
Civil Clerk's Office

JUL 1 5 2006

Superior Court of the
District of Columbia
Washington, D.C.

EXHIBIT
3

## COMPLAINT

(Breach of Contract, Negligence, Intentional Misrepresentations, Negligent Misrepresentation, Concealment or Non-disclosure, Violation of Statute - Unfair or Deceptive Trade Practices)

COMES NOW, JULIA HYMAN TOMALA, by and through her attorneys, Ain & Stein,

LLC, and Michael M. Ain and sues RWN DEVELOPMENT GROUP, LLC, 1700 Kalorama

CONDOMINIUM LLC, and RICHARD W. NAING, individually and as manager and owner of

Rwn Development Group, LLC and 1700 Kalorama Condominium LLC, and as reasons therefor

states as follows:

1.  That at all pertinent times hereto, Plaintiff was a resident of the District of Columbia and
    the purchaser of Unit 401 located at 1700 Kalorama Road, N.W., Washington, DC
    (hereinafter referred to as the "subject property") .

2.  That at all pertinent times hereto, Defendant RWN Development Group, LLC, was a
    Maryland limited liability company doing business in the District of Columbia and was
    the developer of 1700 Kalorama Condominium LLC and Declarant of said condominium
    as that term is defined in §42-1901.01 of the District of Columbia Code 2001 Edition.

3.  That at all pertinent times hereto, Defendant 1700 Kalorama Condominium LLC, was a
    District of Columbia limited liability company and the developer of 1700 Kalorama
    Condominium LLC and Declarant of said condominium as that term is defined in §42-
    1901.01 of the District of Columbia Code 2001 Edition.

4.  That at all pertinent times hereto, Defendant Richard W. Naing was a licensed real estate
    broker; he was the owner, general partner and manager of RWN Development Group,
    LLC and owner, general partner and manager of 1700 Kalorama Condominium LLC and
    an affiliate of the Declarant as that term is defined in §42-1901.01 of the District of

-2-

Columbia Code 2001 Edition and is the owner, general partner, director, manager, and

employer of the Declarant and controls and manages RWN Development Group, LLC.

5.    That at all pertinent times hereto Defendants were in the business of developing and

selling real estate including the condominium located at 1700 Kalorama Road, N.W.,

Washington, DC, the subject property.

6.    That at all pertinent times hereto, Defendants were the agents, servants and/or employees

of one to the other or engaged in a joint venture with each other for their mutual profit.

7.    That at all pertinent times hereto, all persons who designed and built the subject property,

including the installation of the HVAC system, and who were engaged in the selling of

the subject property to the Plaintiff, were engaged in a joint venture with the Defendants

for their mutual profit and/or were the agents, servants or employees of the Defendants.

8.    That on or about September 24, 2004, Plaintiff entered into a real estate transaction with

the Defendants to purchase unit 401 of 1700 Kalorama Road, N.W., Washington, D.C.,

for the purchase price of $787,000 which was paid by Plaintiff as set forth in the contract

attached hereto as Exhibit 1.

9.    That, pursuant to Exhibit 1, Defendants contracted with the Plaintiff to provide a properly

installed, sized and functioning heating and air conditioning system (hereinafter HVAC

system).

10.    That before entering into the purchase of the subject property Defendants, individually

and through their agents, servants and employees, represented that the HVAC system was

designed to maintain the subject property at a reasonable temperature and Defendants

impliedly warranted that the HVAC system was sized in accordance with appropriate

industry standards and installed pursuant to the approved plans for which they obtained

-3-

building permits. Plaintiff reasonably relied upon these representations in entering into the purchase agreement with the Defendants.

11. That, following her habitation of the subject property, Plaintiff discovered that the HVAC system was poorly designed and installed, that it was not in conformance with the plans Defendants submitted to the District of Columbia Department of Regulatory Affairs and not in conformance with the permits obtained by the Defendants and that it lacked the capacity to properly cool her unit. The HVAC system installed by Defendants was undersized for its intended purpose, the furnace blower was too small to accommodate a larger air conditioning unit, the size and distribution of the duct work and diffusers were inadequate, no allowance was made for appropriate return air ducts and the HVAC system was otherwise inadequate, poorly designed and installed by Defendants and their agents, servants and employees and otherwise inappropriate for the subject property. [See Exhibit 2]

12. That, pursuant to her contract with Defendants, Plaintiff notified Defendants of the deficiencies and defects set forth herein; Defendants have repeatedly refused to correct said deficiencies and defects.

13. That, due to Defendants' refusal to correct the deficiencies and defects, Plaintiff was required to remove the existing HVAC system and install a new system and make changes to the existing duct work as set forth in Exhibit 2; the charge for these changes is $27,880.

14. That at all pertinent times hereto Defendants had a duty to exercise reasonable care in making representations concerning the subject property.

-4-

15.  That Defendant Naing, as a licensed real estate broker, is assumed to have special knowledge of his duties as a licensed real estate broker. His assertion of facts which are not true subjects him to liability.

16.  That Defendants knew Plaintiff would reasonably rely upon their representations and the representations made by their agents, servants and employees.

17.  That Plaintiff was entitled to and did reasonably rely on the representations of the Defendants and their agents, servants and employees and entered into their purchase of the subject premises based on said representations.

18.  That when Defendants, individually and through their agents, servants and employees, made the representations set forth in paragraph 10 hereof, they knew or should have known with the exercise of due diligence that said representations were false.

<u>COUNT I</u>
(Breach of Contract)

19.  Plaintiff incorporates paragraphs 1-18 of this Complaint as though fully repeated herein.

20.  That Defendants breached their contract with the Plaintiff by failing to provide an adequate HVAC system.

21.  That, as a direct and proximate result of the breach of the contract by the Defendants, Plaintiff has incurred charges of $27,880 not including costs and fees; Plaintiff has also suffered from consequential damage including but not limited to loss of use and enjoyment of the subject property, discomfort and emotional distress and other losses all in the amount of $152,880.

WHEREFORE, Plaintiff Julia Hyman Tomala demands judgment against the Defendants, RWN Development Group, LLC, 1700 Kalorama Condominium LLC, and

RICHARD W. NAING, jointly and severally, in the amount of $152,880 together with her costs, interests and attorneys fees.

## COUNT II
### (Intentional Misrepresentation-Fraudulent Inducement)

22. Plaintiff incorporates paragraphs 1- 21 of this Complaint as though fully repeated herein.

23. That at all pertinent times hereto Defendants intentionally misrepresented the quality, condition and use of the subject property as set forth in Paragraph 10 hereof thereby fraudulently inducing the Plaintiff to enter into a contract with the Defendants to purchase the subject property.

24. That the Defendants knew or should have known that the HVAC system did not comply with the plans submitted to the District of Columbia upon which the Defendants obtained permits to begin construction and that it was otherwise undersized and inadequate to maintain a reasonable temperature in the subject unit.

25. That Defendants knew that their representations were false when made and that these representations were made to induce the Plaintiff to purchase the subject property.

26. That, in reliance upon Defendants' representations, Plaintiff purchased the subject property.

27. That the Defendants' representations were material and Plaintiff reasonably relied upon Defendants' representations.

28. That, as a direct and proximate result of the breach of the contract by the Defendants, Plaintiff has incurred charges of $27,880 to replace the HVAC system and has incurred other expenses and, in addition thereto, Plaintiff has suffered from consequential damage including but not limited to loss of use and enjoyment of the subject property, discomfort

-6-

and emotional distress and other losses in the amount of $125,000 and has sustained

other costs including attorney fees.

WHEREFORE, Plaintiff, Julia Hyman Tomala, demands judgment against the

Defendants, RWN Development Group, LLC, 1700 Kalorama Condominium LLC, and

RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of

$152,880 and punitive damages in the amount of $250,000 together with her costs, interests and

attorneys fees.

## COUNT III
### (Negligent Misrepresentation)

29. Plaintiff incorporates Paragraphs 1 through 28 of this Complaint as though fully repeated
    herein.

30. That Defendants had the duty to exercise due care in making representations of fact to
    the Plaintiff; this duty of care required Defendants to transmit accurate information to
    Plaintiff including representations regarding the HVAC system.

31. That before Plaintiff purchased the subject property Defendants, individually and through
    their agents, servants and employees, represented to Plaintiff that the subject property
    included an HVAC system and impliedly represented that this system was designed to
    maintain the subject property at a reasonable temperature. Defendants impliedly
    warranted that the HVAC system was sized in accordance with appropriate industry
    standards and installed pursuant to the approved plans for which they obtained building
    permits. Plaintiff reasonably relied upon Defendants' representations in purchasing the
    subject property.

32. That Defendants knew or should have known that these representations were not true and
    Defendants further knew or should have known that the HVAC system was undersized

-7-

undersized for the subject property and that it had been downsized and that other changes were made which made it unfit for its intended purpose of keeping the subject property at a reasonable temperature.

33. That Defendants knew or should have known that Plaintiff was reasonably relying on these representations in entering into their contract with Defendants to purchase subject property.

34. That as a direct and proximate result of the conduct of Defendants and its agents, servants and employees in making these representations Plaintiff was caused to incur charges of $27,880 to replace the HVAC system and, in addition thereto, Plaintiff has suffered from consequential damage including but not limited to loss of use and enjoyment of the subject property, discomfort and emotional distress all in the amount of $125,000 and she has sustained other costs including attorney fees.

WHEREFORE, Plaintiff, Julia Hyman Tomala, demands judgment against the Defendants, RWN Development Group, LLC, 1700 Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of $152,880 together with her costs, interests and attorneys fees.

### COUNT IV
### (Concealment or Non-Disclosure)

35. Plaintiff incorporates paragraphs 1-34 of this Complaint as though fully repeated herein.

36. That between the time of obtaining the permits to construct the subject property and the installation of the HVAC system, Defendants changed the size and capacity of the system, the location of the duct work, including return air ducts and made other changes thereby making the HVAC system inadequate to keep the subject property at a

reasonable temperature; Defendants knew or should have known that the HVAC system did not meet the requirements of the subject property.

37.    That Defendants had a duty to disclose the facts set forth in this Complaint including but not limited to those set forth in paragraph 32 of this Complaint.

38.    That as a direct and proximate result of the conduct of Defendants and its agents, servants and employees in making these representations Plaintiff has incurred charges of $27,880 to replace the HVAC system and, in addition thereto, Plaintiff has suffered from consequential damage including but not limited to loss of use and enjoyment of the subject property, discomfort and emotional distress all in the amount of $125,000 and she has sustained other costs including attorney fees.

WHEREFORE, Plaintiff, Julia Hyman Tomala, demands judgment against the Defendants, RWN Development Group, LLC, 1700 Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of $152,880 and punitive damages in the amount of $250,000 together with her costs, interests and attorneys fees.

### COUNT V
(Violation of Statute/Deceptive Trade Practice)

39.    Plaintiff incorporates paragraphs 1- 38 of this Complaint as though fully repeated herein.

40.    That by making the representations set forth herein, including but not limited to Paragraph 10 hereof, when Defendants knew or should have known such representations were false or misleading, Defendants engaged in unlawful trade practices and committed unfair and deceptive trade practices in violation of §28-3904 of the District of Columbia

Code. Defendants further knew or should have known that the representations made by Defendants concerning the adequacy of the HVAC system were not true and were false and misleading.

41.    That pursuant to §§ 28-3901 et seq. of the District of Columbia Code, in particular, §28-3905(k)(1), Plaintiff is entitled to treble damages, reasonable attorney's fees, punitive damages and other relief that the Court deems proper.

42.    That, as a direct and proximate result of the conduct of Defendants and its agents, servants and employees, in making these representations, Plaintiff has incurred charges of $27,880 to replace the HVAC system and, in addition thereto, Plaintiff has suffered from consequential damage including but not limited to loss of use and enjoyment of the subject property, discomfort and emotional distress all in the amount of $152,880 and she has sustained other costs including attorney fees.

WHEREFORE, Plaintiff, Julia Hyman Tomala, demands judgment against the Defendants, RWN Development Group, LLC, 1700 Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, for compensatory damages in the amount of $458,640 (including treble damages) and punitive damages in the amount of $250,000 together with their costs, interests and attorneys fees.

## COUNT VI
### (Negligence)

43.    Plaintiff incorporates paragraphs 1-42 of this Complaint as though fully repeated herein.

44.    That Defendants and their agents, servants and employees and joint venturers had a duty to properly and adequately design and install the HVAC system.

45.    That Defendants and their agents, servants and employees and joint venturers violated their aforementioned duties by failing to properly and adequately design and install the

-10-

HVAC system so that it could maintain the subject property at a reasonable temperature, and Defendants were otherwise negligent.

46.   That, as a direct and proximate result of the conduct of Defendants and their agents, servants and employees in making these representations, Plaintiff has incurred charges of $27,880 to replace the HVAC system and, in addition thereto, Plaintiff has suffered from consequential damage including but not limited to loss of use and enjoyment of the subject property, discomfort and emotional distress all in the amount of $125,000 and she has sustained other costs including attorney fees.

WHEREFORE, Plaintiff, Julia Hyman Tomala, demands judgment against the Defendants, RWN Development Group, LLC, 1700 Kalorama Condominium LLC, and RICHARD W. NAING, jointly and severally, in the amount of $152,880 together with their costs, interests and attorneys fees.

Respectfully submitted,
Ain & Stein, LLC

By: MICHAEL M. AIN, Esquire
Bar # 227421
Suite 500
401 North Washington St.
Rockville, MD 20850
301-838-0199

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues raised in this Complaint.

MICHAEL M. AIN

-11-

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THE UNIT OWNERS' ASSOCIATION OF,          )
1700 KALORAMA LOFTS,                       )
A CONDOMINIUM,                             )
c/o David H. Cox, Esq.                     )
Jackson & Campbell, P.C.                   )
1120 Twentieth Street, N.W.                )
Suite 300-S                                )
Washington, D.C. 20037                     )
                                           )
        Plaintiff,                         )
                                           )
    v.                                     )  Civil Action No. _____
                                           )
1700 KALORAMA CONDOMINIUM, LLC,            )  Cal.____ - J._____
1700 Kalorama Road, N.W.                   )
Washington, D.C. 20009                     )
                                           )
                                           )
        Serve: Registered Agent            )
        CT Corporation System              )
        101 15th Street, N.W.              )
        Suite 1000                         )
        Washington, D.C. 20005             )
                                           )
    Defendant.                             )
                                           )

### COMPLAINT

COMES NOW the Plaintiff, The Unit Owners' Association of 1700 Kalorama Lofts,

a Condominium (the "Unit Owners' Association"), pursuant to the Civil Rules of the

Superior Court of the District of Columbia, and requests that this Court grant monetary

relief against Defendant 1700 Kalorama Condominium, LLC (the "Defendant") for

breaching its contract with the Unit Owners' Association and the members of the Unit

322802v.1

**EXHIBIT**

4

Owners' Association, for breaching the express warranties against structural defects created pursuant to the D.C. Condominium Act, D.C. Code §42-1901., *et seq.* and the various governing instruments of 1700 Kalorama Lofts, a Condominium (the "Condominium"), and for negligence in failing to construct the Condominium with due care and diligence. In support thereof, the Unit Owners' Association alleges the following:

## PARTIES

1.    Plaintiff, the Unit Owners' Association, is a District of Columbia condominium association, consisting of all the unit owners of real property located at 1700 Kalorama Road, N.W., Washington, D.C. 20009.

2.    Defendant 1700 Kalorama Condominium, LLC (the "Defendant") is a District of Columbia limited liability company, and the declarant of the Condominium.

## JURISDICTION

3.    Jurisdiction of this Court is founded on D.C. Code Ann. § 11-921 (1981 ed.), as amended, D.C. Code Ann. § 13-423 (1981 ed.), as amended.

## FACTUAL BACKGROUND

4.    The Unit Owners' Association is charged with the responsibility of administering the Condominium and arranging for the management of the Condominium.

5.    Pursuant to Chapter 19 of Title 42 of the District of Columbia Code, the Defendant created a condominium of the land located on Lot 81 in Square 2567, commonly known as 1700 Kalorama Road, N.W., Washington, D.C., together with all

improvements thereto and all easements, rights and appurtenances thereto appertaining (the "Property").

6.      The Defendant is subject to the regulations governing condominium regimes in the District of Columbia, as established by D.C. Code §42-1901.01, *et seq.*, as amended (the "Condominium Act").

7.      Section 42-1903.16(b) of the Condominium Act provides that the Defendant shall warrant against structural defects in each of the condominium units for two years from the date each unit is conveyed to a bona fide purchaser and all of the common elements for two years from the date the first unit is conveyed to a bona fide purchaser. D.C. Code §42-1903.16(b)(2006).

8.      "Structural defect", as defined by D.C. Code §42-1903.16, means "a defect in a component that constitutes any unit or portion of the common elements that reduces the stability or safety of the structure below standards commonly accepted in the real estate market, or restricts the normally intended use of all or part of the structure and which requires repair, renovation, restoration or replacement." D.C. Code §42-1903.16(a)(2006)(emphasis supplied).

9.      Pursuant to D.C. Code §42-1903.16, the Defendant shall post with the Mayor of the District of Columbia, a bond or such other security as the Mayor may require to assure compliance with Section 1903.16 of the Condominium Act.

10.     On December 1, 2004, an irrevocable Standby Letter of Credit in the amount of $500,000.00 was posted by Access National Bank, on behalf of the Defendant, for the benefit of The Mayor of the District of Columbia and the Unit

322802v.1

Owners' Association.  A true and exact copy of the Irrevocable Standby Letter of Credit is attached hereto and incorporated herein as Exhibit "A".

11.    The obligations of the Defendant under the Condominium Act are codified, in part, under Section III(C) of the Public Offering Statement, whereby the Defendant agrees to warrant each of the units against structural defects for two years from the date that each unit is conveyed, and all of the common elements for two years from the date they are completed or from the date the first unit is conveyed, whichever is later. A true and exact copy of the Public Offering Statement is attached hereto and incorporated herein as Exhibit "B".

12.    The obligations of the Defendant under the Condominium Act are further codified, in part, with respect to each individual unit owner, by the Limited Condominium Warranty executed by the Defendant to each individual unit owner.  A true and exact copy of the Limited Condominium Warranty is attached hereto and incorporated herein as Exhibit "C".

13.    Pursuant to Paragraph 9 of the Purchase Agreement, executed by and between the Defendant and each individual unit owner, the Defendant agreed to deliver to each individual purchaser, an executed Limited Condominium Warranty.  A true and exact copy of the Purchase Agreement is attached hereto and incorporated herein as Exhibit "D".

14.    The obligations of the Defendant under the Condominium Act are further codified, in part, with respect to the Unit Owners' Association, by the Condominium Guaranty Agreement Against Structural Defects.   A true and exact copy of the

- 4 -

Condominium Guaranty Agreement Against Structural Defects is attached hereto and incorporated herein as Exhibit "E".

15.    As the result of various problems experienced by the Unit Owners' Association at the Property, including, but not limited to, water infiltration and visible deterioration of the common elements, the Unit Owners' Association obtained a Transition Study of the Property. A true and exact copy of the Transition Study is attached hereto and incorporated herein as Exhibit "F".

16.    The Transition Study revealed a multitude of significant, and potentially dangerous, structural defects, as well as defects which impair the normally intended use of the Property, due to the failure of the Defendant to use the reasonable and ordinary care necessary in constructing the Property.

17.    The Unit Owners' Association attempted to resolve the repair of the defects identified by the Transition Study directly with the Defendant.

18.    Despite the Defendant's statutory obligations under the Condominium Act, its contractual obligations under the Purchase Agreement and its warranty obligations under the Limited Condominium Warranty and Condominium Guaranty Agreement Against Structural Defects, the Defendant has failed to repair the identified defects.

19.    The cost of repair of the structural and other defects at the Property amount to $525,000.00.

322802v.1

20.    The Unit Owners' Association seeks to enforce the Defendant's obligations by claiming damages in the amount of $525,000.00, the amount of funds needed to repair the structural deficiencies at the Property, as that term is defined under the Condominium Act.

## COUNT I

### (Breach of Contract)

21.    Plaintiff adopts and incorporates by reference all allegations contained within paragraphs 1 through 20 of this Complaint, as if fully set forth herein.

22.    Pursuant to Paragraph 9 of the Purchase Agreement executed by and between the Defendant and each individual owner/member of the Unit Owners' Association, the Defendant agreed to deliver a fully executed Limited Condominium Warranty to each individual purchaser of a unit at the Property.

23.    Pursuant to the Limited Condominium Warranty and the Condominium Guaranty Against Structural Defects, the Defendant agreed to repair or replace any defect in the structural elements of the unit for a period of two years from the date on which such unit is conveyed to a bona fide purchaser, and any defect in the structural elements of the common elements of the Property for a period of two years from the later of the date as to which each common element is completed, or the date on which the first unit in the Condominium is conveyed to a bona fide purchaser.

24.    The Defendant failed to repair or replace the various structural defects, as that term is defined in the Limited Condominium Warranty and Condominium Guaranty Against Structural Defects, identified in Exhibit "F" attached to this Complaint.

322802v.1

- 6 -

25.    The failure of the Defendant to repair or replace such structural deficiencies constitutes a material breach of the Purchase Agreement, the Limited Condominium Warranty and the Condominium Guaranty Against Structural Defects.

26.    The Unit Owners' Association has sustained damages as a direct and proximate result of the material breach.

27.    The amount of damages will be proven at trial, but is not less than $525,000.00.

## COUNT II

### BREACH OF WARRANTY

28.    Plaintiff adopts and incorporates by reference all allegations contained within paragraphs 1 through 27 of this Complaint, as if fully set forth herein.

29.    As the creator of a condominium regime in the District of Columbia, the Defendant is subject to the provisions of D.C. Code §42-1901, *et seq.*, and the express warranties against structural defects created thereunder.

30.    Pursuant to the condominium documents created and executed by the Defendant for the benefit of the Unit Owners' Association, and the individual members of the Unit Owners' Association, including the Public Offering Statement, the Limited Condominium Warranty and the Condominium Guaranty Against Structural Defects, the Defendant is subject to the express warranties against structural defects created thereunder.

31.    The Defendant failed to repair or replace the various structural defects identified in Exhibit "F" attached to this Complaint, pursuant to its express obligations created under the Condominium Act and its various condominium documents.

32.    The failure of the Defendant to repair or replace such structural deficiencies constitutes a breach of the express warranties by which the Defendant is bound.

33.    The Unit Owners' Association has sustained damages as a direct and proximate result of the material breach.

34.    The amount of damages will be proven at trial, but is not less than $525,000.00.

### COUNT III

### (Negligence)

35.    Plaintiff adopts and incorporates by reference all allegations contained within paragraphs 1 through 34 of this Complaint, as if fully set forth herein.

36.    As the creator of the Condominium, the Defendant owed a duty to the Unit Owners' Association to act with due care and diligence in the construction of the structural elements at the Property.

37.    The Defendant breached its duty of care to the Unit Owners' Association by constructing the structural elements of the Property in a manner which reduced the stability or safety of the Property, and/or which restricted its normally intended use.

38.    As the direct and proximate cause of the Defendant's negligence, the Unit Owners' Association has suffered damages in the amount of the costs necessary to repair or replace the structural deficiencies at the Property.

39.    The amount of damages will be proven at trial, but is not less than $525,000.00.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendant, and that this Court:

(a)    award Plaintiff damages in an amount to be proven at trial, but not less than $525,000.00;

(b)    award Plaintiff its reasonable attorneys' fees and costs incurred to institute and prosecute this lawsuit;

(c)    award prejudgment and post-judgment interest; and

(d)    award other such and further relief as justice may require.

322802v.1

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

By: _David H. Cox_

David H. Cox (D.C. Bar No. 250167)
Jason A. Pardo (D.C. Bar No. 452353)
1120 20th Street, N.W.
South Tower
Washington, D.C. 20036
(202) 457-1600 – telephone
(202) 457-1678 – facsimile
dcox@jackscamp.com
jpardo@jackscamp.com

Attorney for Plaintiff The Unit Owners'
Association for 1700 Kalorama Lofts, a
Condominium